724 F.2d 52
 11 Bankr.Ct.Dec. 539, Bankr. L. Rep. P 69,544
 In re VETTER CORPORATION, Debtor.
HOESE CORPORATION, Appellant,
v.
VETTER CORPORATION, Vetter Products, Inc., and Continental
Illinois National Bank and Trust Company of
Chicago, Appellees.
 No. 83-1371.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 22, 1983.
Decided Dec. 20, 1983.
 
 John F. Martin, Dukes, O'Rourke, Stewart, Martin & Helm, Ltd., Danville, Ill., for appellant.
 Ronald W. Hanson, Sidley & Austin, Chicago, Ill., for appellee.
 Before PELL, COFFEY, and FLAUM, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Appellant, Hoese Corporation, appeals a final order of the United States Bankruptcy Court for the Central District of Illinois, authorizing and confirming the sale of Vetter Corporation's assets to Vetter Products, Inc. We affirm.
 
 I.
 
 2
 In fiscal year 1982, debtor-appellee, Vetter Corporation ("Vetter Corp."), an Illinois corporation involved in the manufacture and sale of motorcycle parts and accessories in Rantoul, Illinois, experienced a seventy percent reduction in sales and a "cash flow" loss of $4.9 million. On January 31, 1983, the company filed a petition for reorganization under Chapter 11 of the Bankruptcy Act, 11 U.S.C. Sec. 1101 et seq. (1982), in the United States Bankruptcy Court for the Central District of Illinois. On that same day, Vetter Corp., as a debtor in possession, also filed with the court an "Application of Debtor to Sell Assets" which was accompanied by a "Purchase Agreement" entered into between Vetter Corp. and Vetter Products, Inc. ("Vetter Products"), a newly formed California corporation.[1] The "Purchase Agreement" provided that Vetter Corp. would sell "substantially all of its assets" to Vetter Products, who, in return, would assume $12 million worth of Vetter Corp.'s indebtedness to Continental Illinois National Bank and Trust Company of Chicago.
 
 
 3
 On the morning of February 14, 1983, Vetter Corp. conducted a meeting of creditors to explain "the financial position of the company, what went wrong ... and the prospects for the future,"[2] and that afternoon a hearing was held in bankruptcy court on the "Application of Debtor to Sell Assets." At this sale hearing, appellant, Hoese Corporation ("Hoese") filed a formal "Objection to a Limited Portion of the 'Application of Debtor to Sell Assets,' " namely the sale of Vetter Corp.'s motorcycle radio housings and the molds used in their manufacture. The attached pleading revealed that on January 23, 1980, Hoese had sued Vetter Corp. in the United States District Court for the Western District of Texas, "alleging infringement of numerous rights of Hoese Corporation and unfair competition" with regard to the motorcycle radio housings. Vetter Corp. counter-sued on similar grounds in the United States District Court for the Central District of Illinois. The cases were consolidated in the Central District of Illinois and set for trial on February 16, 1983. See Vetter Corporation v. Cycle Sound Systems, No. 81-2091 (C.D.Ill. filed March 26, 1981). Pursuant to 11 U.S.C. Sec. 362(a)(1) (1982), the trial was automatically stayed upon Vetter Corp.'s filing of a petition for reorganization in bankruptcy court. The pleading further revealed that on February 1, 1983, Hoese had filed a motion for "Relief From Automatic Stay" which the bankruptcy judge denied but which he allowed Hoese to re-urge at the February 14, sale hearing.
 
 
 4
 At the conclusion of the sale hearing on February 14, 1983, the bankruptcy judge issued an order denying Hoese's motion to lift the automatic stay and, after considering Hoese's objection to the sale of the motorcycle radio housings, the judge issued an order approving the sale of Vetter Corp.'s assets to Vetter Products. In so ruling, the judge stated:
 
 
 5
 "It seems to me that what they [Hoese] are seeking, though they don't use those terms, is to cut out a piece of this sale, go ahead and sell it except for this little piece, and that sounds good in theory, but I don't think it will work in this particular case. There is no indication with all this testimony that Vetter Products, Inc., is prepared to go forward if we cut a little piece out.
 
 
 6
 I think in this particular case, it is appropriate to approve the sale of the assets, pursuant to the purchase agreement with Vetter Products, Inc."
 
 
 7
 The bankruptcy judge certified the order, authorizing and confirming the sale of Vetter Corp.'s assets to Vetter Products, to the district court and the order was approved by the court on February 15, 1983. Claiming that the bankruptcy court erred by refusing to withhold that portion of the sale which included the transfer of Vetter Corp.'s motorcycle radio housings, and the molds used in their manufacture, to Vetter Products, Hoese appealed the order to this court on February 24, 1983.[3] That same day, Hoese appealed the bankruptcy judge's denial of the motion to lift the automatic stay, to the United States District Court for the Central District of Illinois. Thus, the sole issue before this court is whether the bankruptcy court erred in authorizing and confirming the sale of Vetter Corp.'s assets, including the motorcycle radio housings and the molds used in their manufacture, to Vetter Products.
 
 II.
 
 8
 In reviewing appellant's claim that the bankruptcy judge erred in authorizing and confirming the sale of Vetter Corp.'s assets to Vetter Products, we initially note that appellant failed to stay the bankruptcy court's order pending this appeal. The sale has been consummated and "substantially all" of Vetter Corp.'s assets have been transferred to Vetter Products. In effect, appellant asks this court to retract a portion of that January, 1983, sale, namely, the transfer of Vetter Corp.'s motorcycle radio housings, and the mold used in their manufacture, to Vetter Products. According to the express language of section 363(m) of the Bankruptcy Act of 1978, 11 U.S.C. Sec. 363(m) (1982):
 
 
 9
 "The reversal or modification on appeal of ... a sale ... of property does not affect the validity of a sale ... under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale ... [was] stayed pending appeal." (emphasis added).
 
 
 10
 Similarly, former Fed.R.Bank.P. 805[4] provided:
 
 
 11
 "Unless an order approving a sale of property ... is stayed pending appeal, the sale to a good faith purchaser .... shall not be affected by the reversal or modification of such order on appeal, whether or not the purchaser ... knows of the pendency of the appeal." (emphasis added).
 
 
 12
 See also, In re Rock Industries Machinery Corp., 572 F.2d 1195 (7th Cir.1978). This court interpreted former Fed.R.Bank.P. 805 to mean that a failure to stay a bankruptcy judge's order which authorizes and confirms a sale of property to a good faith purchaser renders an appeal of that sale moot. Id. at 1197; Country Fairways, Inc. v. Mottaz, 539 F.2d 637, 641 (7th Cir.1976). Accord, In re Charlton, 708 F.2d 1449, 1454 (9th Cir.1983); In re Bel Air Associates, Ltd., 706 F.2d 301, 304-05 (10th Cir.1983); In re Cada Investments, Inc., 664 F.2d 1158, 1160 (9th Cir.1981); Greylock Glen Corp. v. Community Savings Bank, 656 F.2d 1, 4 (1st Cir.1981); In re Bleaufontaine, Inc., 634 F.2d 1383, 1390 (5th Cir.1981); In re National Homeowners Sales Service Corp., 554 F.2d 636, 637 (4th Cir.1977). We reached this conclusion based upon our reasoning in Fink v. Continental Foundry & Machine Co., 240 F.2d 369, 374 (7th Cir.1957), that "if pending an appeal an event occurs which renders it impossible for the appellate court to grant any relief or renders a decision unnecessary the appeal will be dismissed [as moot]." See Country Fairways, Inc. v. Mottaz, 539 F.2d at 641. In the case of a bankruptcy sale, the failure to obtain a stay of the sale, pending appeal, allows the sale to be completed, thus preventing an appellate court from granting relief and thereby rendering the appeal moot.[5] This rule "is in furtherance of the policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." 14 Collier on Bankruptcy 11-62.03 at 11-62-11 (14th ed. 1977). Accordingly, we hold that pursuant to 11 U.S.C. Sec. 363(m) (1982), if a party appeals a bankruptcy judge's order, authorizing and confirming a sale to a good faith purchaser, the order must be stayed pending appeal, otherwise the issue becomes moot on appeal. See, e.g., In re Jewel Terrace Corp., 10 B.R. 1008, 4 CBC 847, 852 (Bkrtcy.E.D.N.Y.1981).
 
 
 13
 In this instance, appellant failed to stay the bankruptcy court's order authorizing and confirming the sale of Vetter Corp.'s assets to Vetter Products. In an attempt to overcome its failure to stay the order, appellant contends that Vetter Products was not a good faith purchaser as that term is used in 11 U.S.C. Sec. 363(m) (1982) and, therefore, 11 U.S.C. Sec. 363(m) is inapplicable. To support this "lack of good faith" claim, the appellant asserts that Vetter Corp. infringed upon Hoese's motorcycle radio housing patent, that Vetter Products knew of Vetter Corp.'s patent infringement and yet, Vetter Products still chose to complete the purchase of Vetter Corp.'s assets. Appellant claims that Vetter Products' actions constitute the recognized, though somewhat limited, tort of contributory infringement and thus evidence a lack of good faith. See, e.g., Honeywell, Inc. v. Metz Apparatewerke, 509 F.2d 1137, 1142 (7th Cir.1975).
 
 
 14
 "No definition of good faith is attempted in the [Bankruptcy] Code." 2 Collier on Bankruptcy 363.14 at 363-34 (15th ed. 1983). This court, however, has set forth the misconduct which would destroy a purchaser's good faith status when attempting to purchase the assets of a bankrupt debtor. In In re Rock Industries Machinery Corp., 572 F.2d at 1198, we determined that "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" destroys good faith. See also In re Bel Air Associates, Ltd., 706 F.2d at 305; Greylock Glen Corp. v. Community Savings Bank, 656 F.2d at 4. The record in this instance reveals that Vetter Products, an affiliate of Bell Helmets International, Inc., was the only company that offered to purchase Vetter Corp.'s assets. Moreover, the record reveals no evidence of fraud, collusion, or unfair advantage on the part of Vetter Products, nor was any alleged by Hoese. Appellant's only basis for claiming that Vetter Products lacked good faith arises from Vetter Products' knowledge of Vetter Corp.'s pending litigation with Hoese over its motorcycle radio housings. To support this claim, appellant asserts that Hoese has a valid patent on its motorcycle radio housings and that Vetter Corp.'s patent infringement was established at the sale hearing. Appellant then reasons that Vetter Products' purchase of the motorcycle radio housings, and the equipment used in their manufacture, contributed to Vetter Corp.'s patent infringement. From this premise, appellant argues that Vetter Products' contribution to Vetter Corp.'s patent infringement constitutes a tort and thus establishes a lack of good faith.
 
 
 15
 Appellant's novel and unique theory depends, in toto, upon its contention that "[p]atent infringement was clearly established during the bankruptcy [sale] hearing by the unrebutted evidence presented by Hoese." Appellant fails to mention, however, that Hoese admitted at the beginning of that very hearing that "[w]e are not wanting to try out [sic] patent case today." Moreover, the bankruptcy judge later stated that though he was willing to proceed with the sale hearing, "[a]ny time that I think you are getting into litigating this patent thing, I won't let you do that." This testimony clearly reveals that the issue of patent infringement was neither before the bankruptcy court nor decided by the bankruptcy judge during the February 14, 1983, sale hearing.[6] Based upon this testimony, Vetter Corp. certainly had no duty to rebut any evidence of patent validity or infringement at the sale hearing in bankruptcy court. Thus, appellant is wholly unjustified in premising a lack of good faith defense upon knowledge of patent infringement when the issue of patent infringement was neither before the bankruptcy court nor decided by the judge.
 
 
 16
 Based upon the foregoing analysis, we conclude that Vetter Products was a good faith purchaser under 11 U.S.C. Sec. 363(m) (1982). Accordingly, we hold that Hoese's failure to stay the bankruptcy judge's order authorizing and confirming the sale of Vetter Corp.'s assets to Vetter Products, renders this case moot on appeal. Accord In re Rock Machinery Industries Corp., 572 F.2d at 1197-98; Country Fairways, Inc. v. Mottaz, 539 F.2d at 641.
 
 
 17
 Appellant in the alternative, asks this court to lift the stay of Vetter Corporation v. Cycle Sound Systems, No. 81-2091 (C.D.Ill. filed March 26, 1981), presently pending in the district court, and allow the consolidated infringement cases to proceed to trial. The stay issue, however, has not yet been ruled upon by the district court and, therefore, is not properly before us.
 
 III.
 
 18
 We affirm the order of the United States Bankruptcy Court for the Central District of Illinois, authorizing and confirming the sale of Vetter Corporation's assets to Vetter Products, Inc.
 
 
 
 [1]
 The record reveals that Vetter Products, Inc. is an affiliate of Bell Helmets International, Inc
 
 
 [2]
 11 U.S.C. Sec. 341 (1982) requires that a meeting of creditors be held within a reasonable time after the filing of a petition in bankruptcy court
 
 
 [3]
 28 U.S.C. Sec. 1293 (Supp. IV 1980) provides in pertinent part:
 "[A] court of appeals shall have jurisdiction of an appeal from a final ... order ... of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals."
 Though this provision is not to take effect until April 1, 1984, it was made effective during the transition period by section 405(c)(1) and (2) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, 2685 (1978). We also note that the record contains no mention of an agreement, on Vetter Corp.'s part, to appeal the bankruptcy judge's order directly to this court. Instead, we must infer Vetter Corp.'s agreement from the fact that it failed to complain of Hoese's direct appeal to this court and the fact that it fully briefed and argued the matter before this court.
 
 
 [4]
 Effective August 1, 1983, Fed.R.Bank.P. 805 is now embodied in Fed.R.Bank.P. 8005, which provides:
 A motion for a stay of the judgment, order, or decree of a bankruptcy court, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be made in the first instance in the bankruptcy court. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy court may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by the bankruptcy court, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy court. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court. When an appeal is taken by a trustee, a bond or other appropriate security may be required, but when an appeal is taken by the United States or an officer or agency thereof or by direction of any department of the Government of the United States a bond or other security shall not be required.
 Despite the apparent substantive change in the rule, it is important to note that the Advisory Committee Note immediately following Fed.R.Bank.P. 8005 refers to and sets forth the language of 11 U.S.C. Sec. 363(m) (1982).
 
 
 [5]
 13 Collier on Bankruptcy 805.04 at 8-53 (14th ed. 1977) states:
 "An appellant is not obliged to seek a stay pending appeal. The only consequence of failing to obtain a stay is that the prevailing party may treat the judgment or order of the referee as final, notwithstanding an appeal is pending. But as a practical matter, situations will arise where what may be done under the order by the prevailing party is beyond the power of the district judge to undo by reversal of the order. In such a case, seeking a stay becomes mandatory. Otherwise, the appeal may be dismissed as moot."
 Additionally, 9 Moore's Federal Practice 208.03, at 8-10, 8-11 (2d ed. 1980) states:
 "There appears to be a particular danger of dismissal for mootness and thus a special need for seeking a stay when the district court judgment refuses to enjoin an impending sale of property."
 
 
 [6]
 In light of the United States Supreme Court's holding in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 87, 102 S.Ct. 2858, 2879, 73 L.Ed.2d 598 (1982), that bankruptcy courts are "non-Art. III" courts, it appears unlikely that a bankruptcy court even has the constitutional power to determine the validity of a patent or the issue of patent infringement