FEDERAL DEPOSIT INSURANCE
CORPORATION, in its corporate
capacity, Plaintiff-Appellee,

v.

George C. MEYER, Margaret Meyer &
Edwin A. Meyer,
Defendants-Appellants.

No. 84–1010.

United States Court of Appeals,
Seventh Circuit.

Argued June 11, 1985.

Decided Jan. 16, 1986.

See also D.C., 578 F.Supp. 147.

Richard M. Furgason, Dreyer Foote Streit Furgason & Slocum, Aurora, Ill., for defendants-appellants.

Bryan Krakauer, Sidley & Austin, Chicago, Ill., for plaintiff-appellee.

Before COFFEY and EASTERBROOK, Circuit Judges and GRANT, Senior District Judge.*

COFFEY, Circuit Judge.

The defendants appeal the district court's grant of summary judgment in the favor of the plaintiff, Federal Deposit Insurance Corporation ("FDIC"), and ask that the Decree of Foreclosure and that the judgment on a Guaranty be set aside. We affirm.

I

On September 17, 1975, George Meyer executed and delivered an installment note in the amount of $195,000 to the Drovers National Bank of Chicago ("Drovers National"). To secure the loan, George Meyer and his wife, Margaret Meyer, signed a personal guaranty of George Meyer's indebtedness and George Meyer individually entered into a security agreement with the bank granting Drovers National a security interest in his beneficial interest in a land trust.[1] The installment note was also secured by an earlier security agreement[2] and a conditional assignment of George Meyer's beneficial interest in the trust, both dated May 5, 1972, that secured

George Meyer's liabilities to Drovers National incurred after May 5, 1972.

On January 19, 1978, the Comptroller of the Currency, pursuant to 12 U.S.C. § 191, determined the Drovers National Bank to be insolvent, ordered the bank closed, and tendered the offer of appointment as receiver of the bank to the FDIC as authorized by 12 U.S.C. § 1821(c). The FDIC accepted the appointment as receiver and purchased the assets of the bank, pursuant to 12 U.S.C. § 1823(e).[3] Included in the assets purchased by the FDIC were the two security agreements dated May 5, 1972 and September 17, 1975, the assignment of the beneficial interest, the guaranty and the installment note for $195,000.

On April 2, 1982, the FDIC filed suit in United States District Court for the Northern District of Illinois alleging that the $195,000 installment note was in default.[4] Count I of the complaint sought foreclosure of the security interest in George Meyer's beneficial interest in the land trust. Count II, alleging default on a lease by defendant Walters, was dismissed without prejudice at the plaintiff's request. Count III sought judgment against Margaret Meyer on the guaranty signed by George and Margaret Meyer to secure the $195,000 installment note. The FDIC

* The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

1. "'Land trust' means any arrangement under which the title, both legal and equitable, to real property is held by a trustee and the interest of the beneficiary is personal property and under which the beneficiary or any person designated in writing by the beneficiary, has the exclusive power to direct or control the trustee in dealing with the title and the exclusive control of the management, operation, renting and selling of the trust property together with the exclusive right to the earnings, avails and proceeds of said property is in the beneficiary of the trust."
Ill.Rev.Stat. ch. 148, § 71 (Smith-Hurd Supp. 1985).

2. The May 5, 1972 security agreement and the conditional assignment of George Meyer's beneficial interest in the land trust originally secured a prior loan that is not involved in this litigation. The record fails to reveal whether the

1975 security agreement was a renewal or an extension of the 1972 security agreement.

3. The FDIC acted in its corporate capacity when it purchased the assets of the bank from itself acting in its capacity as a receiver.

4. In addition to the defendants George Meyer, Margaret Meyer, and Edwin Meyer (the holder of an unspecified equitable right of redemption), parties having an interest in the trust property, such as lien-holders and lessees, were also named as defendants. The district court found in its Decree of Foreclosure that the defendant Ben B. Cabay Construction Company had a valid mechanic's lien superior to the FDIC's interest in the real estate held in trust. The cause of action against the lessee, defendant Walters, was dismissed without prejudice at the plaintiff's request. Default judgment was entered against the remainder of the defendants with the exception of defendant Edwin Meyer. Only the defendants George Meyer, Margaret Meyer and Edwin Meyer appealed the district court's grant of summary judgment.

moved for summary judgment on Counts I and III, supporting its motion with the affidavit of Daniel D. Wilson, an FDIC official, stating that Wilson had personal knowledge of the books and records kept in the ordinary course of business of the Drovers National Bank and later by the FDIC. Wilson asserted that the FDIC was the current owner of the $195,000 installment note, the security agreements, the assignment of the beneficial interest, and the guaranty and further stated that Meyer was in default under the note. Wilson informed the court of the amount due on the principal, accrued interest, tax advances and legal fees and further stated that interest continued to accrue at the per diem rate of, "((P + 3) × 187,395.02 ÷ 365), where P is the prime interest rate, 187,395.02 is the outstanding principal and 365 is the number of days in the year."

George Meyer, Margaret Meyer and Edwin Meyer (collectively "the Meyers") filed a joint response to the FDIC's motion for summary judgment with a supporting memorandum and a "Response to Affidavit of Daniel Wilson" ("Response"). The "Response" stated that the Meyers were "without sufficient information ... to admit or deny [the allegations in Wilson's affidavit] and demand[ed] strict proof thereof ... [s]pecifically, whether Daniel D. Wilson examined the books and records kept in the ordinary course of business by Drovers Bank and that said books and records included exhibits attached to the Federal Deposit Insurance Corporation Complaint to Foreclose Security Interest." In their joint memorandum in response to the summary judgment motion, the Meyers argued, *inter alia*, that under *Home Fed. Sav. & Loan Assoc. v. Zarkin*, 89 Ill.2d 232, 59 Ill.Dec. 897, 432 N.E.2d 841 (1982), the FDIC owed a fiduciary duty to the land trust beneficiary, George Meyer, and, because it owed

a fiduciary duty to George Meyer, could not foreclose its own security interest.[5]

The district court granted summary judgment in favor of the FDIC on Counts I and III and the FDIC moved for entry of a Decree of Foreclosure and for entry of a judgment order against Margaret Meyer. The district court directed the entry of final judgment in favor of the FDIC on Counts I and III of the complaint, entered a Decree of Foreclosure on Count I and entered judgment against Margaret Meyer on Count III. The Meyers filed a "Motion for New Trial and/or to Alter or Amend Judgment and for Additional Time to File Supporting Affidavits" pursuant to Fed.R. Civ.P. 59 and 52 contending: (1) there was an issue as to what interest rate applied to the loan after its stated maturity date; (2) there was an issue as to whether the security agreement was in the nature of a real estate mortgage; (3) the affidavits of the FDIC were improper in form, stated conclusions, were incompetent evidence and were insufficient to support the motion for summary judgment; (4) additional discovery and development of the facts "were necessary before the court [could] properly rule on the motions for summary judgment;" specifically: "George C. Meyer is without sufficient information in his possession to determine what, if any, amounts are due plaintiff;" (5) any genuine issue of material fact as to the underlying obligation also existed as to the alleged guaranty of Margaret Meyer and any amount due thereunder. The Meyers did not submit affidavits in support of the motion but requested the trial court to allow "reasonable additional time in which to conduct discovery to properly determine from the records in the FDIC's possession what, if any, amounts are due the FDIC." After the Meyers' motion was denied, they filed a notice of appeal but failed to seek a stay of execution of either the Decree of Fore-

---

5. On appeal the Meyers fail to renew the other arguments they advanced in their summary judgment reply brief that: (1) there was a genuine issue of material fact as to "whether the contract of guaranty had been conditioned on all partners becoming co-guarantors;" (2) "the plaintiff herein is not the real party in interest and has no standing to bring this suit against the defendants herein;" and (3) "the plaintiff has not performed all of the terms, covenants and conditions precedent to be performed by them prior to the filing of the Complaint to Foreclose Security Interests."

closure entered on Count I or of the Judgment Order entered on Count III. During the pendency of this appeal, George Meyer's beneficial interest in the land trust was sold to the FDIC at a foreclosure sale conducted by the United States Marshal.[6]

The Meyers argue to this court that the grant of summary judgment to the FDIC was in error contending that there was an issue of material fact as to the amount due because the Wilson affidavit contained hearsay (Wilson's testimony concerning facts contained in Drovers' records), inadmissible conclusions, and speculation as to the interest rate applicable to the loan after its maturity date. Additionally, the defendants contend that there was a genuine issue of material fact as to the true nature of the financial transaction between George Meyer and the Drovers National Bank. Under the Meyers' theory, the district court's finding that the transaction created a security interest in personal property rather than a real estate mortgage erroneously deprived George Meyer of his right of redemption under Illinois mortgage law. The FDIC argues that the appeal of the Decree of Foreclosure is moot since the property in dispute has been sold. Additionally, the FDIC contends that the appeals of the Decree of Foreclosure and of the Judgment against Margaret Meyer should be dismissed because the Meyers failed to raise the points they now urge on appeal in their response to the summary judgment motion.

■ The Meyers also argued that the FDIC assumed the role of trustee under the land trust and, as trustee, owed George Meyer a duty to serve his interest with complete loyalty. The Meyers, relying on the *Zarkin* decision, contended that the court must set aside the transaction between the beneficiary and the trustee if the trustee failed to prove the fairness of the transaction, the disclosure of its conflicts of interest, the beneficiary's voluntary consent, and the fact that there was no over-reaching by the trustee. The Meyers concluded that unless Drovers National Bank disclosed its conflict of interest to George Meyer, the transaction between Drovers National Bank and George Meyer was void *ab initio* and the FDIC, as Drovers National Bank's successor, could not seek a foreclosure on Meyer's beneficial interest and Margaret Meyer was not liable under the guaranty. After the Illinois Supreme Court issued its opinion in *Zarkin*, the Illinois legislature enacted a statute providing that a land trustee does not breach its fiduciary duty to the beneficiary by foreclosing on an assignment of a beneficial interest in the trust. Ill.Rev.Stat. ch. 148, § 81, *et seq.* (1982). The Act specifically applies to all land trusts, whether or not the debt was incurred or the land trust was created prior or subsequent to the date the Act was enacted. *Id.* at § 4. While the appeal in this case was pending, the Illinois Supreme Court held that the retroactivity provision of the Act was valid. *Sanelli v. Glenview State Bank*, 108 Ill.2d 1, 90 Ill. Dec. 908, 483 N.E.2d 226 (1985). Therefore, we hold that the Act and the *Sanelli* decision render the Meyers' fiduciary duty argument groundless.

## II

### A. Mootness

In the absence of a stay of proceedings to enforce a judgment obtained in accordance with Fed.R.Civ.P. 62(d), the mere filing of an appeal does not prevent the judgment creditor from acting to enforce the judgment. *In re Facilities Realty Trust*, 227 F.2d 651 (7th Cir.1955). In the absence of a stay of the enforcement of a judgment, if a district court judgment authorizes the sale of property and the property is sold to a good faith purchaser during the pendency of the appeal, the sale of the property moots the appeal of the judgment ordering the sale. *In re Vetter Corp.*, 724 F.2d 52,

---

**6.** In the appendix to its appellate brief, the FDIC has submitted a copy of the United States Marshal's report of the sale of the beneficial interest. We take judicial notice of this report, pursuant to Fed.R.Evid. 201, as demonstrating that the foreclosure sale took place during the pendency of this appeal.

55 (7th Cir.1983); *In re Rock Ind. Machinery Corp.*, 572 F.2d 1195 (7th Cir.1978); *Country Fairways, Inc. v. Mottaz*, 539 F.2d 637, 641 (7th Cir.1976); *Fink v. Continental Foundry & Machinery Co.*, 240 F.2d 369, 374 (7th Cir.1957). In refusing to reverse the sale of the property to a good faith purchaser, the court of appeals furthers, "the policy of not only affording finality to the judgment ... but particularly to give finality to those orders and judgments upon which third parties rely." *Vetter*, 724 F.2d at 55. The rule that if a district court judgment authorizes the sale of property and the property is sold to a good faith purchaser during the pendency of the appeal because the appellant failed to obtain a stay of the enforcement of the judgment, the sale of the property moots the appeal of the judgment ordering the sale, is an application of the general rule that, "if an event occurs while an appeal is pending that renders it impossible for an appellate court to grant any relief or renders a decision unnecessary, the appeal will be dismissed as moot." *Fink*, 240 F.2d at 374.

The Meyers argue that the appeal of the Foreclosure Decree is not moot because, in their view, the mootness rule is based upon Fed.R.Bank.P. 8005. Additionally, the Meyers contend that the appeal of the Foreclosure Decree is not moot since the Decree "contained certain findings concerning the amount of the debt owing by Meyer" and because "the District Court retains the jurisdiction to determine the amount of any deficiency after sale and to enter a deficiency judgment against Meyer."[7] The Meyers additionally argue that the sale of the property does not moot Margaret Meyer's appeal of the judgment against her as a guarantor of the note under Count III of the complaint.

7. The Meyers also argue that because the judicial sale was made to the FDIC, "the relative positions of the parties to this appeal have not changed even though the judicial sale has taken place." However, an examination of the Marshal's Report of Sale of the beneficial interest in the trust reveals that, out of the $50,000 the FDIC bid on the property, the Ben B. Cabay Construction Company received $12,519.57 in

Initially we note that *Fink v. Continental Foundry & Machinery Co.*, 240 F.2d 369, 374 (7th Cir.1957) (holding that the sale of a corporation's assets during the pendency of the appeal mooted the appeal) is not a bankruptcy case; thus, the Meyers' contention that our mootness decisions are limited to bankruptcy cases is meritless. Indeed, the Meyers have failed to argue why we should limit to bankruptcy cases the policy "of not only affording finality to the judgment ... but particularly to give finality to those orders and judgments upon which third parties rely." *Vetter*, 724 F.2d at 55. We hold that the rule (in the absence of a stay of the enforcement of a judgment, if a district court judgment authorizes the sale of property and the property is sold to a good faith purchaser during the pendency of the appeal, the sale of the property moots the appeal of the judgment ordering the sale) applies to all judgments ordering the sale of property and is not limited to bankruptcy cases.

Addressing separately the Meyers' argument that their appeal of the Foreclosure Decree is not moot because the Decree determines the amount due under the note, the FDIC urges us to reject this argument because the Meyers, in effect, "ignore the finality of [the foreclosure] sale and ask that the Court modify the sale terms—e.g., change Appellant's redemption rights, reduce the amount of the FDIC's claim and thus the amount it can credit bid at the sale, and prevent FDIC from conducting the sale." In general, "credit bidding" is the practice of allowing a foreclosing lender to bid the amount of its mortgage debt including allowable expenses, rather than requiring the lender to bid with cash. Baxter, The Law of Distressed Real Estate, § 12.13[6] at 12–29

satisfaction of its mechanics lien and the Marshal was reimbursed $1,315.60 for the expenses incurred in conducting the sale. Thus the Meyers' contention that the relative positions of the parties have not changed is in error because the FDIC has satisfied a mechanics lien and paid the cost of the foreclosure sale in reliance upon the finality of the sale.

(1985). The foreclosing lender is allowed to credit bid because if the lender is the highest bidder and is required to bid with cash, the lender would pay itself with the same cash it bid. *Id.* A junior lienor, however, must bid in cash. *Id.* Furthermore, if the foreclosing lender bids more than the mortgage debt, the excess must be paid in cash. *Id.* Thus, we agree with the FDIC's contention that the Meyers' appeal of the amount due is in essence an attempt to change the terms of the sale because the judicial finding of the amount due determines the amount the foreclosing lender can credit bid, the amount the junior lienor must pay the senior lienor in cash, and the amount the foreclosing lienor must pay in cash if it bids more than the mortgage debt. Because the appeal of the amount due under the note in effect ignores the finality of the transaction and asks the court of appeals to modify the terms of the sale on which the bidders relied, we hold that this issue was mooted by the sale of the property during the pendency of this appeal.

■ We turn now to the Meyers' contention that the appeal of the Foreclosure Decree is not moot because "the district court retains jurisdiction to determine the amount of any deficiency after sale and to enter a deficiency judgment against Meyer." Under Illinois law, "[i]f the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." Ill.Rev.Stat. ch. 26, § 9–504(2) (1974). A creditor who seeks to recover a deficiency judgment after the sale of the collateral has the burden of establishing, *inter alia,* that the debtor was given notice of the sale and that the collateral was sold at a commercially reasonable sale. *Id.* at (3);

§ 9–507; *see, e.g., Staley Employees Credit Union v. Christie,* 111 Ill.App.3d 165, 66 Ill.Dec. 805, 443 N.E.2d 731 (1982); *Nat. Boulevard Bank of Chicago v. Jackson,* 92 Ill.App.3d 928, 48 Ill.Dec. 327, 416 N.E.2d 358 (1981). The Marshal's Report of Sale, supplied to us by the FDIC, indicates a deficiency of $342,421.41.[8] However, as the Meyers' argument implicitly concedes, the Meyers' liability for the deficiency under the Decree of Foreclosure has not been determined; the record fails to reveal that the FDIC has applied for a deficiency judgment and demonstrated to the district court that the debtor received notice and that the sale was commercially reasonable. Because the Meyers' liability for the deficiency was not determined in the foreclosure sale, there is no final judgment as to their liability for the deficiency under the Decree of Foreclosure for us to review.

■ Finally, we reach the Meyers' contention that the sale of the property did not moot Margaret Meyer's appeal of the judgment on Count III. In *Emerson v. LaSalle Nat. Bank,* 40 Ill.App.3d 794, 352 N.E.2d 45, 50 (1976), the plaintiffs filed a two count complaint; the first count dealt with the foreclosure and sale of mortgaged real estate and the second count was for recovery on a separate instrument of guaranty. The Illinois trial court ordered the foreclosure and the sale resulted in a deficiency. The lender moved for summary judgment for the amount of the deficiency based upon the guaranty while the borrowers argued that the foreclosure and sale relieved them of any obligation under the guaranty. The Illinois appellate court held:

"The right in any foreclosure proceedings to proceed against the property and, in addition to secure a money judgment for any deficiency, provided the creditor

8. A review of the Marshal's report reveals that the deficiency ($342,421.41) is calculated by totalling: (1) the amount due the Ben B. Cabay Construction Company under its mechanics lien ($12,519.57); (2) the principal amount due under the note ($187,395.02); (3) pre-judgment interest at the interest rate specified in the note ($138,085.32); (4) tax advances by the plaintiff ($7,246.47); (5) attorneys fees ($23,229.48); (6) post-judgment interest at the rate provided by Illinois law ($8,794.28); and (7) the Marshal's expenses ($1,315.60) and subtracting from this total ($378,586.24) the net amount disbursed to the plaintiff ($36,164.83). The total amount distributed to the plaintiff is equal to the amount bid at the sale ($50,000) less the payments to the Ben B. Cabay Construction Company and the Marshal ($13,835.17).

receives only one full satisfaction is clear.

\*    \*    \*    \*    \*    \*

The action against guarantors of a note is separate from the remedy by foreclosure and sale. The entry of a deficiency decree against a principal is not res adjudicata of the guarantor's liability."

*Id.* at 50. The Guaranty executed by Margaret Meyer provides:

"The Bank may ... resort to the undersigned (or any of them) for payment of any of the Liabilities, whether or not the Bank shall have resorted to any property securing any of the Liabilities or any obligation hereunder or shall have proceeded against any other of the undersigned or any other party primarily or secondarily liable, on any of the Liabilities."

Thus, Illinois law and the terms of the Guaranty compel us to consider Margaret Meyer's liability under the guaranty separately from the Decree of Foreclosure. Therefore, we examine Margaret Meyers' appeal of the judgment entered on Count III to determine whether it asserts issues not mooted by the sale of the property during the pendency of the appeal. Initially we note that Margaret Meyer did not file a separate brief but joined the other defendants' argument that there was a genuine issue of material fact as to the amount due because the Wilson affidavit was insufficient. Margaret Meyer also joined the contention that there was a genuine issue of material fact as to whether the transactions between George Meyer and the Drovers National Bank created a real estate mortgage or a security interest in personal property (i.e., a security interest in George Meyer's beneficial interest in the land trust). Margaret Meyer complains that the

effect of the district court's alleged error in finding a security interest in personal property is that by so finding, the court failed to provide George Meyer with a right to redeem his beneficial interest after the public sale, as guaranteed under the Illinois law of real estate mortgages. A right of redemption is the right to repurchase the property with the full payment of the debt secured. *See* Ill.Rev.Stat. ch. 110, § 12–128 (1983). In other words, in arguing that the district court improperly cut off George Meyer's right of redemption, Margaret Meyer seeks to reverse the sale of the property. However, as we held above, the appeal of the sale of the property is moot and cannot be appealed separately by Margaret Meyer in her status as guarantor under Count III. On the other hand, Margaret Meyer's appeal of the monetary judgment against her under Count III (as distinguished from an appeal of the sale of the property) is not moot because her liability under the Guaranty is "separate from the remedy by foreclosure and sale. The entry of a deficiency decree against a principal is not res adjudicata of the guarantor's liability." *Emerson,* 352 N.E.2d at 50. Thus, the only remaining argument open for our review is Margaret Meyer's contention that the Wilson affidavit was insufficient and failed to establish her liability under the Guaranty.[9]

B. Summary Judgment Against Margaret Meyer

■ According to Margaret Meyer, the FDIC failed to establish her liability under the Guaranty because the Wilson affidavit did not have copies of the bank's records attached, contained inadmissible hearsay and conclusions, and summarily concluded that "P + 3" meant the prime rate of interest plus three percent per annum. Margaret Meyer concludes that because the FDIC

---

9. Because the FDIC failed to name George Meyer, a co-guarantor, as a defendant under Count III, our discussion is necessarily limited to Margaret Meyer. We hasten to note that had George Meyer been named as a defendant under Count III, our holding on the grant of summary judgment against Margaret Meyer would be equally applicable to his liability under the Guaranty. Furthermore, if the enforcement of the Decree of Foreclosure had been stayed and preserved for our review, our holding on the grant of summary judgment against Margaret Meyer on Count III would apply in equal force to the Decree of Foreclosure entered as a judgment under Count I.

did not establish her liability under the Guaranty, the burden of responding to the FDIC's motion for summary judgment did not shift to her. If a moving party makes out a prima facie case that would entitle him to a directed verdict if uncontroverted at trial, summary judgment will be granted unless the party opposing the motion offers competent evidence showing that there is a genuine issue as to a material fact. *First Nat. Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). If the moving party presents sufficient evidence to entitle him to a directed verdict, the burden of producing evidence is shifted to the party opposing the motion. *Porcelli v. Joseph Schlitz Brewing Co.*, 397 F.Supp. 889 (D.C.Wis. 1975), *aff'd*, 530 F.2d 980 (7th Cir.1976). Moreover, "[a] party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and in the absence of 'a gross miscarriage of justice,' the court may consider the defective affidavit." *Klingman v. Nat. Indem. Co.*, 317 F.2d 850, 854 (7th Cir.1963). An examination of the motion for summary judgment against Margaret Meyer reveals that the FDIC established, through the Wilson affidavit and supporting documents, the terms of the note, security agreements, and guaranty. The FDIC further proved that George Meyer had defaulted on the note, that Margaret Meyer was liable under the guaranty, and the amount due. We hold that the FDIC established a prima facie case to recover the amount due under the note. Thus, the burden shifted to Margaret Meyer either to file a motion to strike the Wilson affidavit or to file counter-affidavits, "set[ting] forth specific facts showing that there [was] a genuine issue for trial." Fed.R.Civ.P. 56(e). Initially we examine the "Response" to the Wilson affidavit to determine whether it raised a genuine issue of material fact. An affidavit offered in response to a motion for summary judgment by persons having no personal knowledge of the matters attested to therein is insufficient to establish the existence of a genuine issue of material fact. *Durovic v. Palmer*, 342 F.2d 634, 637 (7th Cir.

1965); Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Moreover,

"mere allegations in the pleadings are insufficient to show that there is a triable issue if the moving party has made the showing required by Rule 56(c). The burden on the nonmoving party is not a heavy one; he simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.

\* \* \* \* \* \*

In making this showing the opposing party must indicate how he will support his contention that issues of fact remain.

\* \* \* \* \* \*

When the burden of showing the existence of a factual dispute shifts to the nonmoving party, he does not fulfill this obligation merely by asserting, by affidavit or otherwise, that a genuine issue exists for trial.... And, although the court should refrain from assessing the probative value of the material presented, evidence in opposition to the motion that clearly is without any force is insufficient to raise a genuine issue. Thus, neither frivolous assertions nor mere suspicions will suffice to justify a denial of summary judgment. Theoretical questions of fact, and disputes as to matters of form will not preclude summary judgment."

10A Wright, Miller, & Kane, Federal Practice and Procedure, § 2727 at 146–69 (footnotes omitted).

A review of the "Response" reveals that Margaret Meyer alleged that she was "without sufficient information ... to admit or deny the allegations contained in [the Wilson affidavit] and demand[ed] strict proof thereof." We hold that this response is insufficient to raise a genuine issue of material fact because it was not based on the personal knowledge of the affiant. If

Margaret Meyer was without knowledge to respond to the Wilson affidavit, she should have moved for a continuance to obtain discovery under Fed.R.Civ.P. 56(f). Moreover, Margaret Meyer failed to offer any evidence to support her "demand for strict proof" of Wilson's allegation that he had "examined the books and records kept in the ordinary course of business by Drovers Bank and that said books and records included exhibits attached to the Federal Deposit Insurance Corporation Complaint to Foreclose Security Interest." In light of Margaret Meyer's failure to offer evidence supporting this challenge, we hold that Margaret Meyer, at best, asserts a mere suspicion or a theoretical question of fact that is insufficient to raise a genuine issue of material fact. Because the response was not based on personal knowledge and contained somewhat frivolous, immaterial challenges to the Wilson affidavit, we hold that it failed to raise a genuine issue of material fact.

■ On appeal, Margaret Meyer asks us to treat the "Response" as a Motion to Strike the Wilson Affidavit. However, a review of the "Response" reveals that the "Response" failed to raise the issues concerning the affidavit that Margaret Meyer presented in her post-trial motions and in her appellate brief. Specifically, the "Response" failed to argue that supporting documents were not attached, that the affidavit contained inadmissible hearsay and conclusions, or that Wilson's interpretation of the interest rate, "P + 3" was unsupported.[10] We hold that the "Response" cannot be construed as a "motion to strike" because it was insufficient in that it failed to alert the district court to the alleged deficiencies in the moving party's affidavit supporting its motion for summary judgment.

■ Finally, Margaret Meyer alleges that judgment should not have been entered against her because she presented her challenge to the Wilson affidavit in her "Motion for New Trial and/or to Alter or Amend Judgment and for Additional Time to File Supporting Affidavits." Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D.Ill.1982), *aff'd*, 736 F.2d 388 (7th Cir.1984). These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill. 1976). Moreover they cannot be used to argue a case under a new legal theory. *Keene*, 561 F.Supp. at 666; *Evans*, 416 F.Supp. at 244. We hold that the district court properly refused to consider Margaret Meyer's untimely challenge to the Wilson affidavit and affirm his denial of the motion for a new trial and/or to alter or amend the judgment.

The decision of the district court is AF-FIRMED in all matters.

---

10. We note that in her Opposition to Entry of Judgment, filed before she filed her "Response," Margaret Meyer stated that, "interest is running in favor of plaintiff at the prime rate plus three percent."