In re OIL SPILL BY the "AMOCO CADIZ" OFF the COAST OF FRANCE ON MARCH 16, 1978.

In the Matter of the Complaint of AMOCO TRANSPORT COMPANY, Plaintiff, for Exoneration from or Limitation of Liability.

MDL No. 376.

No. 78 C 3693.

United States District Court, N.D. Illinois, E.D.

June 15, 1992.

**262**

Joseph C. Smith, Burlingham Underwood & Lord, New York City, Jeffrey D. Colman, Barry Sullivan, Jenner & Block, Chicago, Ill., for Petroleum Ins. Ltd.

Charles F. Krause, Speiser, Krause & Madole, San Antonio, Tex., Elizabeth W. Walker, Christopher Heckman, Sterns,

Smith & Walker, San Francisco, Cal., for certain claimants.

John D. Gordon, New York City, for American Bureau of Shipping.

T. Barry Kingham, Curtis, Mallet–Prevost, Colt & Mosle, New York City, for Cotes du Nord Parties.

Michael A. Snyder, Ray, Robinson, Carle, Davies & Snyder, Chicago, Ill., for Bugsier Reederei und Bergungs A.G.

Joseph Keig, Jr., James E. Betke, McDermott, Will & Emery, Chicago, Ill., for Astilleros Espanoles, S.A.

Gerald G. Saltarelli, Butler, Rubin, Newcomer, Saltarelli & Boyd, Chicago, Ill., for American Bureau of Shipping.

John J. Kennelly, Susan P. Malone, Chicago, Ill., for Hotel claimants.

Christopher B. Kende, Holtzmann, Wise & Shepard, New York City, for Republic of France.

Frank Cicero, Jr., Roger Taylor, Kirkland & Ellis, Chicago, Ill., for Amoco Transport Co.

Warren J. Marwedel, Paul McCambridge, Keck Mahin & Cate, Chicago, Ill., for S.A. Les Grand Viviers de Porsguen: Yves–Marie Gac (d/b/a Sport Mer).

## ORDER

NORGLE, District Judge.

Before the court is the motion of Petroleum Insurance Limited ("P.I.L.") to reconsider or amend the court's order of April 14, 1992. 789 F.Supp. 268 (N.D.Ill.1992). P.I.L. requests the entry of a Modified Final Judgment against Amoco Transport Company ("Amoco") in favor of P.I.L. in the principal amount of United States Dollars Twenty–One Million Seven Hundred Forty-eight Thousand Five Hundred Seventy–Seven and Forty–Four Cents ($21,748,-577.44) with interest thereon in the amount of United States Dollars Thirty Three Million Five Hundred Sixty Nine Thousand Seven Hundred Thirty–Eight and Thirteen Cents ($33,569,738.13). P.I.L. also requests costs in the amount of $65,974.25 and that Amoco Transport Company pay post judgment interest to P.I.L. on the judgment

entered at the annual rate of 8.09%, compounded per annum, from Judgment dated July 24, 1990.

P.I.L. argues that the undisputed average market rate was 12.31% for the 360-day banking year and that the court has erred in dropping 64 days interest P.I.L. should receive to obtain the 12.31% prime rate awarded by the Court of Appeals. In support of the motion, P.I.L. states it calculated the average prime rate from the published prime rates prevailing during the period between March 16, 1978 and July 24, 1990. Those rates, as confirmed by the Federal Reserve Statistical Release and Thorndike, were based on a 360-day banking year. "Per annum" with respect to prime rate can mean only one thing. Each 360 days the funds are on loan to Amoco, Amoco must pay P.I.L. "hire" at 12.31%, just as Amoco must do if it borrowed the funds from a bank.

P.I.L. adds that the effect of this Court's order of April 14, 1992 is to penalize P.I.L. to the benefit of Amoco by reducing the prime rate awarded by the court of Appeals from 12.31% to 12.14% for a 365-days year and 12.11 for a 366-day year. That, certainly, was not the intention of the Court of Appeals. P.I.L. concludes with:

Interest at what rate? Surely the market rate.

In response, Amoco argues that P.I.L.'s memorandum fails to demonstrate that the court's April 14 Order is based upon a manifest error of law or fact. Further, Amoco argues that P.I.L.'s claim that "the case is procedurally in Limbo" (P.I.L. Memo. at 2) is hypertechnical. The fact is that while the court was considering the parties' $476,000 dispute over the proper computation and amount of prejudgment interest, Amoco and P.I.L. worked out a stipulation to allow Amoco to pay the principal, costs, disputed prejudgment interest, and postjudgment interest on the disputed

amount. Pursuant to that stipulation, on April 2, 1992, $62,580,000 was wire transferred to P.I.L.'s New York bank account.

The response adds that this court correctly resolved the prejudgment interest disputed between Amoco and P.I.L. in a thorough opinion on April 14, 1992, in which the court concluded that "using the 360 day year and assuming that no days exist after December 26" was the only way to comply with all orders of this court and the Seventh Circuit—including the Seventh Circuit's decision that P.I.L. is entitled to 12.31% *per annum.*

In the April 14, 1992 Order, 789 F.Supp. 268, the court said:

## ORDER

Before the court is the motion of Petroleum Insurance Limited ("P.I.L.") to modify this court's July 24, 1990 judgment. The motion is granted in part, as set forth below.

## FACTS

On March 16, 1978, the supertanker *Amoco Cadiz* went down in heavy Atlantic seas with a full load of crude, dumping its 220,000 tons of oil on the north coast of France. The aftermath spawned litigation that was consolidated before this court. A bifurcated trial was held that took more than eight years to complete, resulting in the court's final judgment on July 24, 1990.[1] As part of that final judgment, the court held that the parties should calculate interest on the basis of a 360 day "bank year."

An appeal was had. In a *per curiam* opinion, the Seventh Circuit said in part, "[t]he computation of damages is affirmed with the following exceptions: .... 5. P.I.L. is entitled to simple prejudgment interest at the rate of 12.31% per annum from March 16, 1978." *In re Oil Spill By*

[1] The various federal actions filed as a result of this disaster were consolidated before Judge Frank J. McGarr of the Northern District of Illinois. He bifurcated the matter and held a trial on liability first, then damages. After Judge McGarr retired, this court appointed him as Special Master to see the case through to its fruition. Special Master McGarr's Final Report was issued on October 31, 1989. That Report was adopted by this court on July, 24, 1989. *See In re Oil Spill By the Amoco Cadiz Off the Coast of France On March 16, 1978,* 954 F.2d 1279, 1289-90 (7th Cir.1992).

*the Amoco Cadiz Off the Coast of France On March 16, 1978,* 954 F.2d 1279, 1337 (7th Cir.1992) (hereinafter *"Cadiz"* ). No modification of the court's holding that the 360 day year apply, was made.

On March 4, 1992, P.I.L. moved to modify the court's July 24, 1990 judgment to include a prejudgment interest as required by the Seventh Circuit. The parties agreed that the 360 day year applied and that the amount of principal at issue is $21,748,577.[2] P.I.L. calculated interest as follows: "the sum of $21,748,577.44 ... with interest thereon at the rate of 12.31% ... per annum simple interest from March 16, 1990 as provided by law in the amount of U.S. $33,569,738.13...." [3] *Cadiz,* 954 F.2d at 1337.

Amoco Transport ("Amoco"), the party responsible for payment of the prejudgment interest and the underlying judgment, objected to this calculation. It claims that the calculation of prejudgment interest is "not complex." Amoco figures the total prejudgment interest as $33,093,783.[4] It also states that it is at a loss at how P.I.L. got to their figure.

P.I.L. replied that Amoco failed to take into account the holding of this court that the 360 day year applied. P.I.L. calculated whole years in a manner similar to that of Amoco except that instead of assuming that a 360 day year equaled a calendar 365 or 366 day year, they calculated the interest based on the ratio of the actual number of days in a year over 360. This ratio (for each of the first twelve years) P.I.L. multiplied by 12.31% and multiplied that number by the twenty-one million dollar principal amount to arrive at its figure for the first twelve years. Then, P.I.L. explained, the ratio of 130/360 was multiplied by 12.31%

and the principal to reach a figure for 1990. The sum total was $33,569,738.

## DISCUSSION

Any review of this case reveals that nothing here is done with ease. Calculation of prejudgment interest, even after the rate has been judicially established, is no exception. Both sets of parties vigorously argue their points because every day taken from or added to their calculation means a loss or gain of more than $7,000. For the court to determine how the prejudgment interest is to be calculated, the court relies heavily on the holdings of the Seventh Circuit in *Cadiz* and affirmed conclusions of this court for these must be followed as the law of the case. *See Cadiz,* 954 F.2d at 1291.

### I. Definition of a Year

In common nomenclature, everyone understands what a year is. A girl celebrating her second birthday is commonly understood by her parents to have lived 730 (365 × 2) days. Even though this calculation may be off by as much as a day, for nearly all purposes, this calculation suffices. Two unique problems arise in this case. First, every day makes a difference here. Second, the English language uses more than one definition of a year, and more than one of those has been applied to this case.

What the Court of Appeals said is worth repeating, "P.I.L. is entitled to simple prejudgment interest at the rate of 12.31% *per annum* from March 16, 1978." *Cadiz,* 954 F.2d at 1337 (emphasis added). What is "per annum"? Henry Black defines the phrase as "By the year; annually; yearly." Black's Law Dictionary 1022 (5th ed. 1979). Webster uses a similar definition, "in or for each year." Webster's Ninth New Collegi-

---

**2.** All amounts are stated in United States dollars and will be rounded to the nearest dollar unless otherwise noted. Decimal figures will be discussed in rounded terms but will be calculated to at least five digits to insure accuracy.

**3.** P.I.L.'s motion also sought $65,974.25 in costs under 28 U.S.C. § 1920 and postjudgment interest at the rate of 8.09%. This opinion concerns only the calculation of prejudgment interest. The other issues are reserved for another day.

**4.** The rudimentary calculation is as follows: $21,748,577 × 12.31% = $2,677,249.83 per year. $2,677,249 × 12 years = $32,126,998 for the twelve year period from March 17, 1978 to March 16, 1990. For the period from March 17, 1990, to July 24, 1990, Amoco calculated it to be 130 days. As a result: $2,677,249.83 per year × (130 days/360 day year) = $966,785. The grand total according to Amoco therefore is $33,093,783.

ate Dictionary 872 (1986). But this definition leaves the question of what is a year?

There are a wide variety of definitions of year. One definition is most precise, "a division in time equal to about 365 days, 5 hours, 48 minutes, and 46 seconds, representing the interval between one vernal equinox and the next." Webster's Encyclopedia Unabridged Dictionary of the English Language 1654 (1989). This is commonly known as a calendar year but more accurately termed a solar year. *Id.* This common definition appears to be what the Seventh Circuit intended although this definition is not exclusive.[5]

This court, on the other hand, adopted the 360 day bank year for interest calculation. The Seventh Circuit did not comment on the propriety of this conclusion or how it should be applied. An argument could be made that by specifying "per annum," the appellate court intended a calendar year to apply, as the foregoing discussion reveals. However, as neither party objected to this court's use of the 360 day bank year for interest calculations in this round of briefing based on the Seventh Circuit's opinion, any objections to its use are waived.

## II. Interest Calculation

No cases discuss the use or conflict between the calendar and bank years. P.I.L., in its reply brief, cited Thorndike Encyclopedia of Banking and Financial Tables (3d ed. 1989) ("Thorndike"). The following excerpt shows that Thorndike has grappled with the problem faced by this court: "**A Year.** The basis year for calculating interest may be 360 days, 365 days, or, in the case of leap year, 366 days ... The most commonly used basis year, however, is 360 days." Thorndike at 10–1.1. Thorndike sets forth a formula which the court believes provides the best solution to the prejudgment interest calculation problem.

Stated mathematically, the formula is:
Interest = Principal × Rate × Time
The principal is $21,748,577. The rate set by the Seventh Circuit was 12.31% or .1231.

Time is somewhat problematic. Exactly 4514 days pass between March 16, 1978 and July 24, 1990 (counting the day the ship went down and the day of the judgment as a whole day). Four thousand three hundred eighty-four days pass between the first and the twelfth anniversaries of the sinking. One hundred and thirty days pass between the twelfth anniversary and the date of the judgment. Thorndike explains, however, that,

[t]he time factor is the fraction of a year during which money earns interest. In the computation of daily interest, the time factor is expressed as a fraction in which the number of days between dates is the numerator and the basis year is the denominator. The time factor for 1 year may be any one of the following: 360/360, 365/360, 366/360, 365/365, 366/365, or 366/366.

Thorndike, at 11–1.1. Using a 360 day year as the court previously determined it must, the end result is prejudgment interest in the amount of $33,569,738.[6] This is what P.I.L. wants.

P.I.L.'s formulation of the equation is one of the alternatives specified by Thorndike. However, the math nets them a rate above 12.31%. P.I.L.'s annual factorial in a non-leap year would be 365/360. But the *per annum* rate of return of 12.31% in such a case would pay interest on five more days than the annum of 360 days as defined by the court. Therefore, the rate of return on their involuntary investment would be more than 12.31% because inter-

5. There are many other names describing the same period of time: astronomical year, equinoctial year, or tropical year. Webster's Encyclopedia Unabridged Dictionary of the English Language 1654 (1989). A sidereal year is twenty minutes longer but also based on one revolution of the earth around the sun. *Id.* There can also be lunar years (13 lunar months), Platonic year (Greek astronomical measure), Sothic year (Egyptian astronomical measure), or any of a number of religiously-based definitions such as the ecclesiastical year, the Hebrew year, and the Mohammedan year. Funk & Wagnalls New Standard Dictionary of the English Language 2743 (1949).

6. The math is as follows: 4514 ÷ 360 = 12.539. 12.539 × .1231 = 1.544. 1.544 × 21,748,577 = 33,569,738.13.2

est is paid on five more days. The *real* rate of return, then, is actually higher than 12.31%.[7] Any such result would not comport with the mandate of the Seventh Circuit which clearly said that the rate was to be 12.31%. *Cadiz*, 954 F.2d at 1335, 1337.

The court must strive to apply a real rate of return of 12.31%. The only way to achieve a real rate is to use the same definition for annum as used in formulating the percentage return itself. Thus the number of days in a year must be the same for both. In this case, a year has been judicially determined to be 360 days, not more or less. Therefore, a real rate of return of 12.31% can be accomplished only be using the 360 day year and assuming that no days exist after December 26. No other method works and complies with all orders of both courts.

Thus, the amount of interest is calculated as follows:

| Year | Principal | Rate | Time | Interest |
|------|-----------|------|------|----------|
| 1 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 2 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 3 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 4 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 5 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 6 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 7 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 8 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 9 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 10 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 11 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 12 | $21,748,577 | .1231 | (360/360) | $ 2,677,249.83 |
| 13 | $21,748,577 | .1231 | (130/360) | $ 966,784.66 |
| TOTAL PREJUDGMENT INTEREST.............................. | | | | $33,093,782.62 |

If the court were to use the actual number of days as the numerator and denominator of the time fraction (365/365 or 366/366), the result would be the same for the first twelve annums. And, the last 130 days would earn $13,243.63 *less* interest than under the court's calculation (Principal × Rate × (130/365)). The method employed by this court best comports with the mandate of the Seventh Circuit. By applying the 360 day year to the judgment, the court applies a real rate of return of equal to that specified by the Seventh Circuit during the first twelve years.[8] The remaining 130 days in the term are calculated on that same basis, using 360 days as the denominator in the Time fraction. This nets a return of exactly 12.31% in the first twelve years. In the last 130 days P.I.L. gets a little extra. But when balancing the equities, the court must favor the involuntary creditor and the injured party, P.I.L. *Cadiz*, 954 F.2d at 1332.

## CONCLUSION

Prejudgment interest is awarded to P.I.L. in the amount of $33,093,782.62.

In its response, Amoco argues that P.I.L. has failed to meet its burden on a motion for reconsideration to "clearly establish either a manifest error of law or fact or ... present newly discovered evidence." *FDIC*

---

7. The real rate under such a scenario is 12.481% ($100 × .1231 × (365/360)).

8. This is so because the rate is calculated on an *annual* basis, regardless of what definition of annum is used. For example, 12.31% interest on $100 will earn $12.31 at the end of a calendar year of 365 days. By the same token, that same $100 will earn the same $12.31 at the end of a bank year even though there are, by definition, five less days upon which the interest is earned. This is so because the numerator and denominator in either Time fraction are the same—either 365/365 or 360/360—both equal 1.

*v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986) (motion to alter or amend judgment). Likewise, P.I.L. has made no effort to show that the court abused its discretion in the computation of prejudgment interest. *Cf. Amsted Industries Inc. v. National Castings, Inc.,* 1990 WL 205878 at 3 (N.D.Ill. Dec. 7, 1990) (calculation of prejudgment interest left to discretion of district court). Thus, P.I.L.'s motion for reconsideration should be denied.

■ The court has again reviewed the arguments of P.I.L. Motions for reconsideration serve a limited function. *Keene Corp. v. Int'l Fidelity Ins. Co.,* 561 F.Supp. 656, 665 (N.D.Ill.1983). They are ordinarily granted only to correct clear errors of law or fact or to present newly discovered evidence which could not have been adduced during the pendency of the motion. *Publishers Resource v. Walker–Davis Publications,* 762 F.2d 557, 561 (7th Cir.1985); *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.,* 605 F.Supp. 6 (N.D.Ill.1983).

■ Motions for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal argumentation which could have been heard during the pendency of the previous motion, *Publishers Resource,* 762 F.2d at 561; *In re Sisson,* 668 F.Supp. 1196 (N.D.Ill.1987), or to present evidence that could have been adduced during the pendency of the original motion. *Keene Corp.,* 561 Supp. at 665. Finally, motions to reconsider are not at the disposal of parties who want to "rehash" old arguments. *Refrigeration Sales,* 605 F.Supp. at 7.

■ There is no reasonable basis in fact or law for the court to reconsider, amend, or modify its order of April 14, 1992.

The motion of P.I.L. is denied. Prejudgment interest is awarded to P.I.L. in the amount of $33,093,782.62.

IT IS SO ORDERED.