[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-16272

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 5, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00135-CV-T-17-TGW

GULFSTREAM PARK RACING ASSOCIATION, INC.,
a Florida corporation,

Plaintiff-Counter-
Defendant-Appellant
Cross-Appellee,

versus

TAMPA BAY DOWNS, INC.,
a Florida corporation,

Defendant-Counter-
Claimant-Appellee
Cross-Appellant,

FLORIDA JAI-ALAI, INC., et al.,

Intervenors-Defendants,
Appellees.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(March 5, 2007)**

Before BLACK, HILL and ALARCON,[*] Circuit Judges.

PER CURIAM:

This case arises out of a dispute between Gulfstream Park Racing Association ("Gulfstream") and Tampa Bay Downs, Inc. ("Tampa Bay Downs") over the enforceability of certain contracts under Florida's Pari-Mutuel Wagering Act (the "Wagering Act"). Because we found that this was an unsettled question of distinct importance to the State of Florida in its efforts to regulate the gambling industry, and because the Wagering Act is part of a complex and extensive regulatory scheme governing the gambling industry in the State of Florida, we certified the following question to the Florida Supreme Court:

> DOES THE FLORIDA PARI-MUTUEL WAGERING ACT PROHIBIT AN AGREEMENT BETWEEN A FLORIDA THOROUGHBRED RACETRACK AND AN OUT-OF-STATE RACETRACK THAT GRANTS THE FLORIDA RACETRACK THE EXCLUSIVE RIGHT TO DISSEMINATE THE OUT-OF-STATE TRACK'S SIMULCAST SIGNAL TO OTHER FLORIDA WAGERING SITES PERMITTED TO RECEIVE THEM?

We have now received that Court's answer to this question, and we shall resolve the case before us.

I.

---

[*]Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

In Florida, pari-mutuel wagers on broadcasts or "Simulcasts" of live horse races from out-of-state host tracks can be placed only at venues that have pari-mutuel wagering permits from the Florida Division of Pari-Mutuel Wagering. Prior to 1997, the State of Florida placed statutory restrictions on the number of these Simulcasts that thoroughbred racetracks in Florida could receive and disseminate to other pari-mutuel wagering sites (including other horse racing tracks, greyhound tracks, and jai alai frontons). In late 1996, however, the Florida legislature removed this limitation. Once the limitation was removed, Gulfstream began entering into "Exclusive Contracts" with various out-of-state thoroughbred racetracks that purported to grant Gulfstream the "exclusive right" to disseminate Simulcasts of the out-of-state races to the other wagering sites.

On January 27, 2003, Gulfstream sued Tampa Bay Downs alleging that it had interfered with and usurped Gulfstream's "exclusive rights" to disseminate these Simulcasts. In Count 3 of its complaint, Gulfstream sought a declaratory judgment that these exclusivity provisions were valid and enforceable in Florida because they are not prohibited by Sections 550.615(3) and 550.6305(9)(g)1 of the Wagering Act.[1] In response, Tampa Bay Downs counterclaimed for damages,

---

[1]Gulfstream also claimed damages from Tampa Bay Downs caused by its alleged breach of the Simulcast agreements (Count 4) and its intentional interference with Gulfstream's prospective advantageous business relationships with the pari-mutuel permit holders (Count 5).

alleging Gulfstream's exclusive contracts violated federal and state antitrust laws.

Subsequently, Tampa Bay Downs filed a motion for summary judgment, contending that Sections 550.615(3) and 550.5305(9)(g)1 of the Wagering Act prohibit Gulfstream's exclusive agreements with the other wagering sites.[2]

Although no Florida appellate court had decided a case that considered whether the Wagering Act prohibits exclusive or restrictive provisions in Simulcast agreements between an out-of-state host track and a Florida thoroughbred guest track, the district court held that the plain meaning of the Wagering Act did prohibit such provisions, and granted summary judgment to Tampa Bay Downs on this issue. *Gulfstream Park Racing Ass'n., Inc. v. Tampa Bay Downs, Inc.*, 294 F. Supp. 2d 1291 (M.D. Fla. 2003).

The Supreme Court of Florida has now answered that the district court's interpretation of the Wagering Act was correct, and the Act does indeed prohibit the sort of contracts at issue in this case.[3] *Gulfstream Park Racing Ass'n., Inc. v.*

---

[2]Tampa Bay Downs also argued that it was entitled to judgment on Gulfstream's contract-based tort claims.

[3]Additionally, the Florida Supreme Court opined that the relevant sections of the Wagering Act are not preempted by the Interstate Horse Racing Act. We agree with this conclusion because simultaneous compliance with the requirements of both the state and federal statutes is possible. Thus, there is no conflict preemption. Nor do we find any conflict with the Federal Copyright Act.

*Tampa Bay Downs, Inc.*, 2006 WL 2690152 (Fla.), 31 Fla. L. Weekly S591 (Fla.

Sept. 21, 2006).

Therefore, based upon that answer, we shall affirm the entry of judgment for

Tampa Bay Downs by the district court as to Count 3 of Gulfstream's second

amended complaint.[4]

## II.

Remaining for resolution is Tampa Bay Downs' appeal of the district

court's disposition of its antitrust claims. In its counterclaim, Tampa Bay Downs

sought damages from Gulfstream, alleging that its exclusive dissemination

agreements unreasonably restrained competition in violation of Section 1 of the

Sherman Antitrust Act, as well as the relevant Florida statutes. The district court

rejected this claim, holding that Tampa Bay Downs' evidence was legally

insufficient to establish the relevant product market for antitrust purposes.

*Gulfstream Park*, 294 F. Supp. 2d at 1309-10. Tampa Bay Downs appeals this

ruling.

To establish the relevant market, Tampa Bay Downs relied upon expert

---

[4]We also agree with the district court that Gulfstream's claims for intentional interference with advantageous business relationships and breach of contract cannot be maintained when the contract interfered with or breached was void *ab initio*. *See Thomas v. Ratiner*, 462 So. 2d 1157, 1159 (Fla. 3d DCA 1985). Accordingly, we shall affirm the district court's entry of summary judgment for Tampa Bay Downs on these contract-based tort claims as well.

testimony, which the district court held was conclusory, based upon insufficient economic analysis, and incomplete in its definition of the relevant market. *Id.* at 1307-10. We have previously held that as a matter of law such testimony does not establish the relevant market. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246-47 (11th Cir. 2002) (plaintiff's expert testimony, which failed to consider alternative products in defining relevant market, insufficient as a matter of law); *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1553, 1555 (11th Cir. 1996) (affirming summary judgment where the plaintiff's economist failed to adequately define relevant market).

We have reviewed the expert testimony on this issue in the context of the district court's careful and very thorough analysis of its deficiencies and we find no error in its conclusion that the testimony was insufficient, as a matter of law, to establish the relevant market. Accordingly, the court's entry of summary judgment for Gulfstream on this claim is affirmed.

### III.

For the foregoing reasons, and based upon the Florida Supreme Court's answer to our certified question, the judgment of the district court is, in all respects,

AFFIRMED.

6