James E. **BOONE** and Volt Information Sciences, Inc., Plaintiffs,

v.

**CORESTAFF SUPPORT SERVICES, INC. and Impellam Group PLC, Defendants.**

**Civil Action No. 1:11–CV–1175–RWS.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 3, 2011.

Order Denying Certification Oct. 17, 2011.

---

Brian Michael Harris, Robert Jason D'Cruz, Morris, Manning & Martin LLP, Gary Daniel Knopf, Rebecca Shanlever, Troutman Sanders, LLP–ATL, Atlanta, GA, for Plaintiffs.

Brett David Zudekoff, Eric Leroy Barnum, Samuel David Almon, Schiff Hardin, LLP, Atlanta, GA, for Defendants.

## *ORDER*

RICHARD W. STORY, District Judge.

This case comes before the Court on Plaintiffs' Motion to Alter or Amend Judgment, or in the Alternative, for Reconsideration [30] and Plaintiffs' Motion for Hearing [33]. After considering the record, the Court enters the following Order.

As an initial matter, the Court does not find a hearing on Plaintiffs' Motion for Reconsideration [30] necessary to resolve the issues presented therein. Plaintiffs' Motion for Hearing [33] is **DENIED.**

### Background

Plaintiffs filed this action on April 22, 2011 seeking a declaration that restrictive covenants contained in a non-compete agreement ("Non–Compete") [1–2] entered into between James E. Boone and Corestaff Support Services, Inc.[1] ("Corestaff") in association with an employment agreement ("Employment Agreement") [1–1] are unenforceable as a matter of law and seeking injunctive relief preventing Defendants from enforcing the covenants, instituting an action against Plaintiffs arising from Boone's employment with Corestaff, or precluding Boone's employment with Volt Information Sciences, Inc.[2] ("Volt"). (Dkt. [1] at 27). Both the Non–Compete and Employment Agreement were signed by Boone and Defendants at the offices of Corestaff and Impellam in Atlanta, Georgia. (Dkt. [18] at 1).

---

1. Corestaff is a California corporation with its principal place of business in Texas. (Dkt. [1] at ¶ 3; Dkt. [7–4] at ¶ 6).

2. Volt is a New York corporation with its principal place of business in New York. (Dkt. ▮ at ¶ 2).

Boone began employment with Corestaff, as its President and CEO, in December 2008 by entering into the Employment Agreement. (Complaint, Dkt. [1] at ¶¶ 16, 17, 30). In association with the Employment Agreement, Boone signed the Non-Compete which, among other things, restricts his engagement or participation in the business of staffing services and temporary employment services or any other business in which Corestaff and its affiliates engage in, upon leaving Corestaff. (*Id.* at ¶¶ 18–29). As President and CEO of Corestaff, Boone lived and worked in Georgia. (*Id.* at ¶ 33).

On April 11, 2011, Boone hand-delivered to Cheryl Jones, Impellam Group PLC's [3] ("Impellam") Chairman, and Boone's boss, sixty days written notice of his intent to resign his employment with Corestaff. (*Id.* at ¶ 34). Jones informed Boone that Defendants "will definitely enforce the [NCA]." (*Id.* at ¶ 37). Boone's positions with Volt—including group CEO of ProcureStaff Technologies Ltd., a subsidiary of Volt, and CEO of Volt Consulting Group, a unit of another Volt Subsidiary—will be based in Georgia. (*Id.* at ¶ 41). In the course of his employment with Volt, Boone will solicit, or attempt to solicit, current or former Corestaff customers to purchase competing products and services from Volt and solicit the employment of former employees or agents of Corestaff or Impellam and its subsidiaries. (*Id.* at ¶ 45, 46). If the restrictive covenants in the Non–Compete are enforceable, Boone's activities on behalf of Volt will violate one or more of these covenants. (*Id.* at ¶ 47). Plaintiffs therefore believe that Volt will take legal action to prevent Boone from working for it and have thus filed the present action. (*Id.* at ¶ 49).

On May 6, 2011, Corestaff and Impellam, defendants in this action, along with Corporate Employment Resources, Inc.[4] ("CER"), Guidant Group, Inc.[5] ("Guidant"), Corporate Services Groups Holdings, Inc.[6] ("CSGH"), and The Corporate Services Group, Ltd.[7] ("CSG") (collectively the "Delaware Plaintiffs"), filed suit against Plaintiffs in a Delaware court ("Delaware Action"). (Complaint in Delaware Action, Dkt. [7–4]). CER, Guidant, and Corestaff are all subsidiaries of CSGH (collectively the "U.S. Companies"). (*Id.* at ¶¶ 5, 12). CSGH is a wholly owned subsidiary of CSG, which is a wholly owned subsidiary of Impellam. (*Id.* at ¶¶ 5, 7). After entering into the Employment Agreement and Non–Compete, Boone was elected by the written consent of CSG to be a director of CSGH and was elected by written consent of CSGH to be a director on the boards of Corestaff, CER, and Guidant. (*Id.* at ¶ 18). Boone was also elected by the Boards of Directors of CSGH, Corestaff, and CER to serve as President of these companies and elected by the Board of Directors of Guidant to serve as its Vice President. (*Id.*). In practice, he was the head of Impellam's United States operations. (*Id.*). The Delaware Plaintiffs filed

---

**3.** Impellam is a public limited company that is organized in England and Wales and has its principal place of business in Luton, United Kingdom. (Dkt. [1] at ¶ 4; Dkt. [7–4] at ¶ 8).

**4.** CER is a Delaware corporation with its principal place of business in Texas. (Dkt. [7–4] at ¶ 3).

**5.** Guidant is Delaware corporation with its principal place of business in Texas. (Dkt. ▮ at ¶ 4).

**6.** CSGH is a Delaware corporation with its principal place of business in Texas. (Dkt. ▮ at ¶ 5).

**7.** CSG is a limited company organized in England and Wales with its principal place of business in Luton, United Kingdom. (Dkt. ▮ at ¶ 7).

suit to prevent Boone "from violating his fiduciary duties and contractual obligations owed to [Delaware] Plaintiffs by taking their confidential information and trade secrets and using them in the employ of a direct competitor, Volt." (*Id.* at ¶ 1). The Delaware Action was subsequently removed to the U.S. District Court for the District of Delaware.

Defendants sought to have this action stayed or dismissed in favor of the Delaware Action. Neither the Employment Agreement nor the Non–Compete has a forum selection clause prescribing that suit be brought in Delaware. Both the Employment Agreement and the NCA have choice-of-law provisions stating that Delaware law is to govern both agreements. (Dkt. [1–1] at ¶ 15(a)); (Dkt. [1–2] at ¶ 4(d)).

On June 9, 2011, the Court issued an Order (the "Order") [28] granting Defendant's Motion to Dismiss [7] and denying as moot Plaintiffs' Motion for Summary Judgment [5], Defendants' Motion to Disqualify [8], and Plaintiffs' Motion to Stay Discovery [26]. Plaintiffs' Motion for Reconsideration asks the Court to revisit its rulings as to the Motion to Dismiss that: (1) a recent shift in Georgia's public policy towards restrictive covenants in employment agreements allowed for the application of Delaware law without violating Georgia's public policy; (2) this action was filed in response to a threat of litigation; and (3) this action does not encompass the entire controversy between the parties. (Dkt. [30] at 2). The Court now examines Plaintiffs' arguments.

## Discussion

### I. Motion for Reconsideration [30]

#### A. *Standard for Reconsideration*

Under the Local Rules of this Court, "[m]otions for reconsideration shall not be filed as a matter of routine practice[,]" but rather, only when "absolutely necessary." LR 7.2(E), NDGa. Such absolute necessity arises where there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy,* 246 F.Supp.2d 1256, 1258–59 (N.D.Ga. 2003). However, a motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test whether the court will change its mind." *Id.* at 1259. Furthermore, "[a] motion for reconsideration is not an opportunity for the moving party ... to instruct the court on how the court 'could have done it better' the first time." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,* 916 F.Supp. 1557, 1560 (N.D.Ga.1995), aff'd, 87 F.3d 1242 (11th Cir.1996).

#### B. *Georgia's Public Policy*

The Court previously stated:

In determining the validity of the Non–Compete this Court would likely apply Delaware law, and this weighs strongly in favor of dismissal. The District Court for the District of Delaware, being more familiar with Delaware law, is better equipped to adjudicate this dispute.

Both the Employment Agreement and the Non–Compete contain Delaware choice-of-law provisions. In Georgia, the law of the jurisdiction chosen by parties to a contract govern their contractual rights unless the application of the other jurisdiction's law violates Georgia's public policy. *Convergys Corp. v. Keener,* [276 Ga. 808] 582 S.E.2d 84, 85 (Ga.2003); *Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.,* 133 F.3d 1405, 1409 (11th Cir.1998) (citations omitted). Therefore, the threshold question is whether the application of

Delaware law in this context violates Georgia's public policy.

(Dkt. [28] at 12). Relying upon the passage of a new restrictive covenant law in Georgia (the "New Act") as indicative of a shift in Georgia's public policy, the Court found that Delaware law as to restrictive covenants in employment agreements was not violative of Georgia's public policy as reflected by the New Act. (*Id.* at 12–15). In reaching this conclusion, the Court overlooked the decision of the Court of Appeals of Georgia in *Bunker Hill Int'l, Ltd. v. Nationsbuilder Ins. Servs., Inc.,* 309 Ga.App. 503, 710 S.E.2d 662 (2011), cited by Plaintiffs in their Response to the Motion to Dismiss. (Dkt. [18] at 17).

*Bunker Hill* is analogous to the facts of this action. In that case, an employee and his new employer brought an action seeking a declaration that the restrictive covenants the employee entered into with his previous employer are unenforceable under Georgia law. *Id.* at 664. The employee in that case entered into an employment agreement with his previous employer in April 2006 and June 2008, before the effective date of the New Act. *Id.* The court's decision, coming after the effective date of the New Act, relied upon Georgia's public policy at the time of the agreement to hold that the non-compete and non-solicitation provisions of the agreements are unenforceable in Georgia. *Id.* at 666. The court specifically noted that "[b]ecause the agreement at issue was entered into in 2008, we apply the law of restrictive covenants as it existed before the November 2010 ratification of [the New Act]." *Id.* at 665 n. 1. Furthermore the Court stated that "Georgia courts do not edit or 'blue-pencil' employment agreements in order to salvage some provisions when others have been found void." *Id.* at 667 (citation omitted). The New Act, in contrast allows for the application of the "blue-pencil" rule. O.C.G.A. § 13–8–53(d).

■ The Court of Appeals of Georgia recently reached the same conclusion it reached in *Bunker Hill* in two other cases. *See Gordon Document Products, Inc. v. Serv. Techs., Inc.,* 308 Ga.App. 445, 708 S.E.2d 48, 52 n. 5 (2011) ("Our analysis in this case is unaffected by any recent legislative proposals or changes. *See* O.C.G.A. § 13–8–2.1(a) and applicability date contained in Ga. L. 2009, p. 231, § 4.") and *Cox v. Altus Healthcare & Hospice, Inc.,* 308 Ga.App. 28, 706 S.E.2d 660, 663–664 (2011) ("O.C.G.A. § 13–8–2.1(a) authorizes covenants 'that restrain in a reasonable manner.' However, Ga. L. 2009, p. 231, § 4 provides that the new version of the statute 'shall not apply in actions determining the enforceability of restrictive covenants entered into before' [its] ratification. We therefore apply the law of restrictive covenants as it existed before that event."). Having examined *Bunker Hill, Gordon Document Products,* and *Cox,* the Court recognizes that it made a clear error of law in it previous Order [28] in determining that the public policy embodied in the New Act should apply to the Non–Compete. Rather, in determining whether the application of Delaware law creates a conflict, the Court should apply Georgia's public policy as it existed at the time Boone entered into the Non–Compete.

■ If a restrictive covenant is not enforceable under Georgia law, it is violative of Georgia's public policy and a choice-of-law provision choosing the law of a foreign jurisdiction may not be applied to enforce the covenant. *Convergys Corp. v. Keener,* 276 Ga. 808, 582 S.E.2d 84, 85–86 (2003). Under Georgia law, "[r]estrictive covenants in employment contracts are in partial restraint of trade and are enforceable only if strictly limited in time and territorial effect and are otherwise reasonable considering the business interest of the employer sought to be protected and

the effect on the employee." *Bunker Hill,* 710 S.E.2d at 666 (citation omitted). Further, "if any of the sub-paragraphs of the restrictive covenant are invalid, the entire covenant must fall." *Uni–Worth Enters. v. Wilson,* 244 Ga. 636, 261 S.E.2d 572, 575 (1979). Section 2(e) of the Non–Compete Agreement states: "The Restricted Period shall be tolled (shall not run) for so long as [Boone] is in breach of any of his obligations under ... Section 2 [of the Non–Compete]." Such a tolling provision is unenforceable under Georgia law. *See ALW Marketing Corp. v. McKinney,* 205 Ga.App. 184, 421 S.E.2d 565, 568 (1992) (holding that a "tolling provision potentially extends the duration of the covenant without limit and renders it unreasonable and unenforceable on its face" (citations omitted)). In contrast, Delaware courts will enforce the tolling of restrictive covenants. *See Concord Steel, Inc. v. Wilmington Steel Processing Co., Inc.,* 2009 WL 3161643, at *15 (Del.Ch. Sept. 30, 2009) (issuing injunction that accounts for the tolling of a restrictive covenant). At a minimum the tolling provision of the Non–Compete is unenforceable in Georgia and would likely be enforced in a Delaware court. Because the application of Delaware law to the Non–Compete is violative of Georgia's public policy, the Court will apply Georgia law. Therefore, a factor that weighed strongly in the Court's decision not to exercise jurisdiction is no longer present.

## C. *Anticipation of Litigation*

 The Court's finding that this action was filed in anticipation of litigation is not a clear error of law. (Dkt. [28] at 7–

10). However, as noted in the Order: "The Court is cognizant that an anticipatory filing does not mandate dismissal, but rather 'remains one equitable factor among many that a district court can consider in determining whether to hear a declaratory judgment action.' *Manuel,* 430 F.3d at 1135–36." (*Id.* at 10).

## D. *Entirety of the Controversy*

 In the Order, the Court noted that

> While this action includes Corestaff and Impellam as parties, it does not include CSG, CSGH, CER, and Guidant, all of whom are plaintiffs in the Delaware Action. The Delaware action also includes Delaware state law claims not asserted here. While Plaintiffs Volt and Boone seek a judgment in this action declaring that the restrictive covenants contained in the Non–Compete are unenforceable, such a declaration will not fully resolve the controversy between the parties.

(*Id.* at 11). The Court's determination that this weighs in favor of dismissal does not represent a clear error of law or fact. While the claims asserted in the Delaware Action may be asserted in this Court as counterclaims because they arise from the same nucleus of operative facts, Plaintiffs failed to make this argument in their Response to the Motion to Dismiss [18].[8]

## E. *Exercise of Jurisdiction*

 The Order stated:

The Court is cognizant that there are factors that weigh in favor of exercising jurisdiction over this declaratory judgment action. Most compellingly, Boone

---

8. A motion for reconsideration is appropriate if necessary to call the Court's attention to controlling precedent "which could not have been adduced during the pendency of the motion." *Escareno v. Noltina Crucible and Refractory Corp.,* 172 F.R.D. 517, 520 (N.D.Ga.1994) (quoting *In re Oil Spill by the* *Amoco Cadiz,* 794 F.Supp. 261, 267 (N.D.Ill. 1992)). A motion for reconsideration cannot be used to "raise legal argumentation which could have been heard during the pendency of the previous motion." *In re Oil Spill,* 794 F.Supp. at 267.

is a Georgia citizen who entered into the Employment Agreement in Georgia, and under the Employment Agreement worked primarily from Georgia. It may be that this forum provides greater access to relevant documents and sources of proof. It is not clear that this forum is more convenient than Delaware for the parties or witnesses. Granted Boone is a resident of Georgia, but no single corporate entity involved in this dispute has its principal place of business in the state. Further, Jones, with whom Boone negotiated and signed the Employment Agreement and Non–Compete resides in the United Kingdom. When considering the totality of the circumstances, particularly that this action was filed in anticipation of the Delaware Action, that the Delaware Action encompasses the entirety of the present dispute, including parties and claims not present in this action, and that this Court would need to apply Delaware law, the Court will decline to exercise its jurisdiction under the Declaratory Judgment Act.

(Dkt. [28] at 15–16). In addition to the aforementioned factors that weigh in favor of exercising jurisdiction, because the Court now finds that it would not apply Delaware law to determine the enforceability of the Non–Compete, and because the claims set forth in the Delaware Action may be asserted in this action, the Court will exercise its jurisdiction under the Declaratory Judgment Act.[9] Plaintiffs' Motion for Reconsideration is **GRANTED**, and upon reconsideration, Defendants' Motion to Dismiss [7] is **DENIED**. Therefore the Court will examine the merits of the Mo-

tions [5, 8, 26] it previously denied as moot.

## II. Plaintiffs' Motion for Summary Judgment [5]

 Plaintiffs' Complaint [1] seeks a declaration that the restrictive covenants are unenforceable, as well as preliminary and permanent injunctive relief preventing the enforcement of the restrictive covenants. (Dkt. [1] at 27–28). Because the Court has already found that one of the sub-parts of the Non–Compete is unenforceable under Georgia law, none of the restrictive covenants contained in the Non–Compete are enforceable. *See Uni–Worth Enters. v. Wilson,* 244 Ga. 636, 261 S.E.2d 572, 575 (1979) (holding that if any part of a non-compete agreement is unenforceable, the entire agreement is unenforceable). However, Plaintiffs' request for a declaratory judgment may be barred by the doctrine of unclean hands. "[T]he declaratory judgment and injunctive remedies are equitable in nature and other equitable defenses may be interposed." *Abbott Labs. v. Gardner,* 387 U.S. 136, 155, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) *abrogated on other grounds* by *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). "Unclean hands generally prevents the court from even considering the merits of plaintiff's claims." *West v. West,* 825 F.Supp. 1033, 1049 (N.D.Ga.1992) (citation omitted). To establish the defense of unclean hands, a defendant must: "First, ... demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted.... Second, ... the defendant [must] show that it was personally injured

---

9. "The factors relevant in deciding whether to hear a declaratory judgment action are equitable in nature." *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir.2005) (citation omitted). Some relevant factors include: (1) the convenience of the witnesses; (2) location of documents and access to sources of evi-

dence; (3) convenience of the parties; (4) the locus of operative facts; (5) a forum's familiarity with the governing law; (6) the weight accorded a plaintiff's choice of forum; and (7) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.* at 1135 n. 1.

by [the] conduct." *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 451 (11th Cir.1993).

 Defendants offer two primary arguments in support of their defense of unclean hands. First, Defendants argue that "Boone entered into the Non–Compete intending not to abide by its terms." (Dkt. [15] at 19). Rather, he "indicated that he intended to abide by the Non–Compete," and neither he nor his attorney, R. Jason D'Cruz, "ever stated that they believed the Non–Compete at issue to be unenforceable." (*Id.*) Second, "Defendants suspect Boone has kept lists of customers, key employees, and other proprietary and confidential information belonging to Corestaff, which he secured after deciding to join Volt, but before notifying Corestaff of his resignation." Neither argument constitutes a sufficient defense of unclean hands such that a declaratory judgment concerning the Non–Compete should not be entered. As to the First, even assuming the veracity of the claim, "in an arms-length business or contractual relationship there is no obligation to disclose information which is equally available to both parties." *S. Intermodal Logistics, Inc. v. Smith & Kelly Co.*, 190 Ga.App. 584, 379 S.E.2d 612, 614 (1989) (citation omitted). As to the second, even assuming that Boone has kept lists of customers, key employees, and other proprietary and confidential information, this claim does not arise out of the Non–Compete, but is more properly considered under the Employment Agreement. Paragraph 10 of the Employment Agreement [1–1] directly addresses confidential information, and Defendants may have a cause of action pursuant to its breach if Boone has retained confidential information. Additionally, given Boone's positions within the U.S. Companies, Defendants may have claims against Boone for breach of fiduciary duty. Nonetheless, neither argument offered by

Defendants constitutes an adequate defense of unclean hands.

Plaintiffs' Motion for Summary Judgment is **GRANTED in part,** and **DENIED in part.** The restrictive covenants contained in the Non–Compete Agreement are unenforceable and may not be enforced against Boone. However, as the Court has noted, Defendant has claims, whether or not asserted in the Delaware action, that may be properly pursued in this forum. Therefore, the Court will not grant an injunction preventing Corestaff from prosecuting an action against Volt or Boone, arising from his employment with Volt.

Plaintiffs filed their Motion for Summary Judgment [5] before Defendants even made an appearance in this action. Defendants will be given an opportunity to file an answer to Plaintiffs' Complaint and assert counterclaims, to the extent it is not based upon the enforceability of the restrictive covenants. Having now ruled on Plaintiffs' Motion for Summary Judgment [5] and Defendants' Motion to Dismiss [7], Plaintiffs' Motion to Stay Discovery [26] is **DENIED as moot.**

### III. Defendants' Motion to Disqualify ██

██ Defendants argue that the representation of Plaintiffs by R. Jason D'Cruz and Morris, Manning & Martin, LLP violates the Georgia Rules of Professional Conduct. Rule 1.9 states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Defendants assert that disqualification is warranted because D'Cruz and Morris Manning provided legal advice and counsel to Corestaff

and Impellam in matters involving employment agreements and restrictive covenants-specifically the enforceability of non-compete and non-solicitation provisions under the laws of Georgia and other states. Plaintiff Boone contends that D'Cruz and Morris Manning never provided Corestaff with advice regarding Boone's employment with Corestaff and that advice provided to Corestaff in regards to non-competition and non-solicitation clauses involved materially different provisions.

Boone reads Rule 1.9 far too narrowly. The legal advice and counsel D'Cruz and Morris Manning provided to Corestaff concerning employment agreements containing restrictive covenants, particularly those to be governed by Georgia law, is "substantially related" to their representation of Boone in this matter, which primarily concerns the enforceability of the restrictive covenants contained in Boone's Non–Compete with Corestaff. Therefore, Defendants' Motion to Disqualify [8] is **GRANTED**. R. Jason D'Cruz and Morris, Manning & Martin, LLP are **DISQUALIFIED** from continuing to act as counsel for Plaintiff Boone in this action. Further, Jason D'Cruz and Morris, Manning & Martin, LLP are **PROHIBITED** from assisting Volt and/or its counsel in this action.

## Conclusion

For the aforementioned reasons, Plaintiffs' Motion for Reconsideration [30] is **GRANTED,** Plaintiffs' Motion for Hearing [33] is **DENIED,** Defendant's Motion to Dismiss [7] is **DENIED,** Defendants' Motion to Disqualify [8] is **GRANTED,** Plaintiffs' Motion for Summary Judgment [5] is **GRANTED in part,** and **DENIED in part,** and Plaintiffs' Motion to Stay Discovery [26] is **DENIED as moot.**

## ORDER

This case comes before the Court on Defendants' Motion for Certification to Supreme Court of Georgia, or for Entry of Judgment under Rule 54(b), and for Stay [37]. After considering the record, the Court enters the following Order.

### Background

Plaintiffs filed this action on April 22, 2011 seeking a declaration that restrictive covenants contained in a non-compete agreement ("Non–Compete") [1–2] entered into between James E. Boone and Corestaff Support Services, Inc.[1] ("Corestaff") in association with an employment agreement ("Employment Agreement") [1–1] are unenforceable as a matter of law and seeking injunctive relief preventing Defendants from enforcing the covenants, instituting an action against Plaintiffs arising from Boone's employment with Corestaff, or precluding Boone's employment with Volt Information Sciences, Inc.[2] ("Volt"). (Dkt. [1] at 27). Both the Non–Compete and Employment Agreement were signed by Boone and Defendants at the offices of Corestaff and Impellam in Atlanta, Georgia. (Dkt. [18] at 1).

Boone began employment with Corestaff, as its President and CEO, in December 2008 by entering into the Employment Agreement. (Complaint, Dkt. [1] at ¶¶ 16, 17, 30). In association with the Employment Agreement, Boone signed the Non–Compete, which, among other things, restricts his engagement or participation in the business of staffing services and temporary employment services or any other business in which Corestaff and its affiliates engage in, upon leaving Corestaff. (*Id.* at ¶¶ 18–29). As President and CEO of Corestaff, Boone lived and worked in Georgia. (*Id.* at ¶ 33).

---

1. Corestaff is a California corporation with its principal place of business in Texas. (Dkt. [1] at ¶ 3; Dkt. [7–4] at ¶ 6).

2. Volt is a New York corporation with its principal place of business in New York. (Dkt. at ¶ 2).

On April 11, 2011, Boone hand-delivered to Cheryl Jones, Impellam Group PLC's[3] ("Impellam") Chairman and Boone's boss, sixty days written notice of his intent to resign his employment with Corestaff. (*Id.* at ¶ 34). Jones informed Boone that Defendants "will definitely enforce the [NCA]." (*Id.* at ¶ 37). Boone's positions with Volt-including group CEO of ProcureStaff Technologies Ltd., a subsidiary of Volt, and CEO of Volt Consulting Group, a unit of another Volt subsidiary—will be based in Georgia. (*Id.* at ¶ 41). In the course of his employment with Volt, Boone will solicit, or attempt to solicit, current or former Corestaff customers to purchase competing products and services from Volt and solicit the employment of former employees or agents of Corestaff or Impellam and its subsidiaries. (*Id.* at ¶¶ 45, 46). If the restrictive covenants in the Non–Compete are enforceable, Boone's activities on behalf of Volt will violate one or more of these covenants. (*Id.* at ¶ 47). Believing that Defendants would take legal action to prevent Boone from working for Volt, Plaintiffs filed the present action. (*Id.* at ¶ 49).

On May 6, 2011, Corestaff and Impellam, Defendants in this action, along with Corporate Employment Resources, Inc.[4] ("CER"), Guidant Group, Inc.[5] ("Guidant"), Corporate Services Groups Holdings, Inc.[6] ("CSGH"), and The Corporate Services Group, Ltd.[7] ("CSG") (collectively the "Delaware Plaintiffs"), filed suit against Plaintiffs in a Delaware court ("Delaware Action"). (Complaint in Delaware Action, Dkt. [7–4] ). CER, Guidant, and Corestaff are all subsidiaries of CSGH (collectively the "U.S. Companies"). (*Id.* at ¶¶ 5, 12). CSGH is a wholly owned subsidiary of CSG, which is a wholly owned subsidiary of Impellam. (*Id.* at ¶¶ 5, 7). After entering into the Employment Agreement and Non–Compete, Boone was elected by the written consent of CSG to be a director of CSGH and was elected by written consent of CSGH to be a director on the boards of Corestaff, CER, and Guidant. (*Id.* at ¶ 18). Boone was also elected by the Boards of Directors of CSGH, Corestaff, and CER to serve as President of these companies and elected by the Board of Directors of Guidant to serve as its Vice President. (*Id.*). In practice, he was the head of Impellam's United States operations. (*Id.*). The Delaware Plaintiffs filed suit to prevent Boone "from violating his fiduciary duties and contractual obligations owed to [Delaware] Plaintiffs by taking their confidential information and trade secrets and using them in the employ of a direct competitor, Volt." (*Id.* at ¶ 1). The Delaware Action was subsequently removed to the U.S. District Court for the District of Delaware.

Defendants sought to have this action stayed or dismissed in favor of the Delaware Action. Neither the Employment Agreement nor the Non–Compete has a forum selection clause prescribing that suit

---

3. Impellam is a public limited company that is organized in England and Wales and has its principal place of business in Luton, United Kingdom. (Dkt. [1] at ¶ 4; Dkt. [7–4] at ¶ 8).

4. CER is a Delaware corporation with its principal place of business in Texas. (Dkt. [7–4] at ¶ 3).

5. Guidant is Delaware corporation with its principal place of business in Texas. (Dkt. ▬ at ¶ 4).

6. CSGH is a Delaware corporation with its principal place of business in Texas. (Dkt. ▬ at ¶ 5).

7. CSG is a limited company organized in England and Wales with its principal place of business in Luton, United Kingdom. (Dkt. ▬ at ¶ 7).

be brought in Delaware. Both the Employment Agreement and the NCA have choice-of-law provisions stating that Delaware law is to govern both agreements. (Dkt. [1–1] at ¶ 15(a)); (Dkt. [1–2] at ¶ 4(d)).

On June 9, 2011, the Court issued an Order [28] granting Defendants' Motion to Dismiss [7] and denying as moot Plaintiffs' Motion for Summary Judgment [5], Defendants' Motion to Disqualify [8], and Plaintiffs' Motion to Stay Discovery [26]. This Order was based in part on the Court's conclusion that it would apply Delaware law-the law chosen by the parties to govern their agreements—to determine the validity of the Non–Compete, which weighed against exercising jurisdiction under the Declaratory Judgment Act and in favor of the Delaware court adjudicating the dispute. (Dkt. [28] at 12–15). The Court concluded that Delaware law would apply because Delaware law is "in accord with Georgia's *new* public policy position on restrictive covenants· in employment agreements," as expressed in Georgia's new restrictive covenant law, O.C.G.A. § 13–8–2.1(a), and constitutional amendment adopting that law. (*Id.* (emphasis added)).

On June 17, 2011, Plaintiffs moved this Court to alter or amend, or, in the alternative, reconsider its June 9 Order [30], partly on the basis of Georgia Court of Appeals precedent that refused to apply foreign law to determine the validity of a restrictive covenant, where application of the foreign law would be contrary to Georgia's

public policy on restrictive covenants as it existed *at the time the agreement was entered into.* (Dkt. [30] at 6–9) (citing *Bunker Hill Int'l Ltd. v. Nationsbuilder Ins. Servs., Inc.,* 309 Ga.App. 503, 710 S.E.2d 662 (2011) (emphasis added)). After considering *Bunker Hill* and two other decisions of the Georgia Court of Appeals,[8] the Court, by order dated August 3, 2011[35], held that it made a clear error of law in its June 9 Order when it failed to compare Delaware law to Georgia's public policy as it existed at the time the parties entered into the Non–Compete. Accordingly, the Court changed the focus of its analysis and found that Delaware law would not apply, as application of Delaware law would violate Georgia's public policy prevailing at the time the Non–Compete was entered into. Having found that Delaware law would not apply, the Court granted Plaintiff's Motion for Reconsideration [30] and, upon reconsideration, denied Defendant's Motion to Dismiss [7].

The Court also considered the merits of Plaintiffs' Motion for Summary Judgment [5], which it granted in part and denied in part.[9] The Court found that the restrictive covenants in the Non–Compete were unenforceable as a matter of law and thus granted summary judgment to Plaintiffs on their claim for declaratory relief. The Court denied summary judgment to Plaintiffs, however, on their claim for an injunction preventing Defendants from prosecuting an action against Plaintiffs, given the Court's conclusion that Defendants had

---

**8.** Specifically, the Court cited *Gordon Document Prods., Inc. v. Serv. Techs., Inc.,* 308 Ga.App. 445, 708 S.E.2d 48 (2011) and *Cox v. Altus Healthcare & Hospice, Inc.,* 308 Ga.App. 28, 706 S.E.2d 660 (2011) as support for the proposition that in analyzing whether the application of foreign law to determine the validity of a non-compete agreement conflicts with Georgia's public policy, courts must consider public policy as it existed at the time the

agreement was entered into, rather than at the time the agreement is sought to be enforced.

**9.** In this Order, the Court also denied Plaintiff's Motion for Hearing [33], granted Defendants' Motion to Disqualify [8], and denied Plaintiff's Motion to Stay Discovery [26] as moot. (*Id.*).

counterclaims unrelated to the Non–Compete that properly could be asserted in this Court.

In the Motion now before the Court, Defendants request that the Court certify the following question of law to the Supreme Court of Georgia on grounds that the question is dispositive of this action and no controlling precedents exist in the decisions of the Georgia Supreme Court:

> In determining whether a designated choice-of-law provision in a restrictive covenant/ non-compete agreement contravenes Georgia's public policy, should the court look to Georgia's public policy in effect at the time of the Court's analysis and evaluation of the choice-of-law provision, or the public policy in effect at the time the agreement was entered into?

(Dkt. [37–1] at 9, 14). In the alternative, Defendants move the Court to enter final judgment under Federal Rule of Civil Procedure 54(b) on Plaintiffs' claim for a declaratory judgment that the Non–Compete is unenforceable. (*Id.* at 15). In support of this request, Defendants argue that Plaintiffs' claim for declaratory relief is final and separable from any claims that may remain in the case-Defendant's counterclaims unrelated to the Non–Compete–and that Defendants will be irreparably harmed if forced to await resolution of their counterclaims before appealing the Court's ruling regarding the Non–Compete. (*Id.* at 17, 21). Defendants also request a stay of this action pending either of the above forms of relief. (*Id.* at 23).

## Discussion

### I. Certification to the Georgia Supreme Court

■■■■■ Federal courts have discretion to certify " 'novel, unsettled questions of state law' " to the state's highest court for resolution. *Pittman v. Cole*, 267 F.3d 1269, 1289 (11th Cir.2001) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)). Accordingly, "where there is doubt in the interpretation of state law ... a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Gulfstream Park Racing Ass'n. v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1279 (11th Cir.2005) (internal quotations and citation omitted). In determining whether to exercise its discretion to certify a question to the state court, a federal court should consider the following factors: the closeness of the question, considerations of comity in light of the particular issue and case, and the practical limitations of the certification process, including significant delay. *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir.1976).[10] The most important of these factors is the first. *Id.* Thus, where there are sufficient sources of state law "to allow a principled rather than conjectural conclusion," the certification process should not be invoked. *Id.* at 275. *See also Smigiel v. Aetna Cas. & Sur. Co.*, 785 F.2d 922, 924–25 (11th Cir.1986) (declining to certify question to state supreme court, reasoning, "Although we are *Erie*-bound, we may exercise an option to make an educated guess as to how the Florida courts would resolve the issue.... We find that we are sufficiently educated by the available Florida authority to allow our exercise of that option.") (internal citation omitted).

■■■■ As in *Smigiel*, the Court concludes that it is sufficiently educated by

10. In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

the existing Georgia authority to make a principled decision as to how the Georgia Supreme Court would rule on the issue presented in this case. Indeed, the Court finds that the Georgia Court of Appeals has definitively settled the issue, as the Court explained in its August 3, 2011 Order. In *Bunker Hill,* the Georgia Court of Appeals considered a non-compete agreement in an employment contract that contained choice-of-law and forum-selection provisions, which designated Illinois law to govern the agreement and provided for any disputes arising out of the agreement to be litigated in Illinois courts. 710 S.E.2d at 664–65. The Court of Appeals's analysis began with the general rule that a forum-selection or choice-of-law provision will be invalid if it "contravenes a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." *Id.* at 665. The Court of Appeals then analyzed the forum-selection provision in light of Georgia's public policy as it existed *when the agreement was entered into. Id.* As Georgia public policy at that time strongly disfavored non-compete agreements, and as an Illinois court applying Illinois law would likely enforce the non-compete at issue, the Court of Appeals found the forum-selection clause void. *Id.* at 666–67.

The court in *Bunker Hill* reached this conclusion in spite of the Georgia legislature's passage of a new restrictive covenant law in 2009, favoring restrictive covenants, and a constitutional amendment adopting that law, which became effective on January 1, 2011 (collectively the "new law"). In doing so, the court stated, "Because the agreement at issue was entered into in 2008, we apply the law of restrictive covenants as it existed before the November 2010 ratification of an amendment to the Constitution of Georgia adopting O.C.G.A. § 13–8–2.1(a) into law." *Id.* at 665 n. 1 (citing *Cox v. Altus Healthcare & Hospice, Inc.,* 308 Ga.App. 28, 706 S.E.2d

660 (Ga.Ct.App.2011)). In *Cox,* the Court of Appeals explained,

> Now effective as a result of the ratification of an amendment to the Constitution of Georgia in the general election of November 2, 2010, O.C.G.A. § 13–8–2.1(a) authorizes covenants 'that restrain in a reasonable manner.' However, Ga. L.2009, p. 231, § 4 provides that the new version of the statute 'shall not apply in actions determining the enforceability of restrictive covenants entered into before' the ratification. We therefore apply the law of restrictive covenants as it existed before that event. 'By both constitutional and legislative provision, the former law prohibited 'contracts or agreements in general restraint of trade.'

706 S.E.2d at 663–64 (internal citations omitted). *See also Gordon Doc. Prods., Inc. v. Serv. Techs., Inc.,* 308 Ga.App. 445, 708 S.E.2d 48, 52 n. 5 (2011) ("Our analysis in this case is unaffected by any recent legislative proposals or changes.").

Defendants argue in their Motion and Reply that *Bunker Hill* did not decide the question at issue because its decision to consult Georgia public policy as it existed at the time the restrictive covenants were entered into was without analysis. (Dkt. [37–1] at p. 11; Dkt. [47] at p. 5). Defendants also argue that *Cox* and *Gordon Document Products* are irrelevant to the question, making much of the fact that neither case involved a choice-of-law provision. (Dkt. [47] at pp. 5–6) ("But neither of those cases involved a choice-of-law provision or discussed public policy. Rather, they stood for the uncontroversial proposition that the *statute itself* is not retroactive."). The Court finds both contentions to be without merit.

With regard to the latter, the Court finds it immaterial that neither Cox nor *Gordon Document Products* considered

the enforceability of a choice-of-law provision in a non-compete agreement. The court in both cases stated that to determine the validity of a non-compete, courts should look to the law of restrictive covenants as it existed at the time the non-compete was entered into. The presence of a choice-of-law provision in a contested non-compete should not change this analysis. In fact, the Court finds it incongruous that a Georgia court would apply old Georgia law, which disfavors restrictive covenants, in deciding whether to enforce a restrictive covenant entered into before passage of the new law, but would consult new public policy, which favors restrictive covenants, in deciding whether to enforce a choice-of-law provision governing the same restrictive covenant and that would give effect to that covenant. Considering Georgia's current public policy in the latter case would have the same effect as applying the new restrictive covenant law retroactively, which Defendants agree is not permissible, (Dkt. [47] at 6).

With regard to the former contention, the degree of analysis presented in *Bunker Hill* is similarly irrelevant. The Court of Appeals, faced with the same key facts as the Court in this case, plainly looked to Georgia public policy as it existed at the time the restrictive covenants were entered into to determine whether to give effect to the forum-selection and choice-of-law provisions governing those covenants. This decision is sufficient guidance to enable the Court to resolve the question presented in a "principled rather than conjectural" manner. Indeed, shortly after the parties submitted their briefs to the Court, the Middle District of Georgia was presented with the same issue and reached the same conclusion as this Court in *Becham v. Synthes (U.S.A.)*, No. 5:11–CV–73, 2011 WL 4102816 (M.D.Ga. Sept. 14, 2011). After a detailed analysis of the legislative history behind the new law, the *Becham* court, citing *Bunker Hill,* concluded that it must consider old public policy-that which prevailed at the time the non-compete agreement at issue was entered into-to determine whether to give effect to that agreement's choice-of-law provision.

Accordingly, the Court finds that the question at issue in this case is not so novel or unsettled as to require certification to the Georgia Supreme Court. Defendants' Motion for Certification is hereby **DENIED**.

## II. Entry of Final Judgment under Rule 54(b)

In the alternative, Defendants move the Court to enter a final judgment under Federal Rule of Civil Procedure 54(b) on Plaintiffs' claim for a declaratory judgment that the Non–Compete is unenforceable. Under Rule 54(b),

> When an action presents more than one claim for relief-whether as a claim, counterclaim, crossclaim, or third-party claim-or when multiple parties are involved, the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed.R.Civ.P. 54(b). The purpose of this Rule is to codify the historic prohibition against piecemeal appeals, thus preserving the use of appeals for final judgments and the "infrequent harsh case" in which the requirements of the Rule are satisfied. *In re Se. Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir.1995). Accordingly, courts should exercise their discretion to enter partial final judgment under Rule 54(b) sparingly. *See, e.g., id.* at 1548 ("The caseload of the federal courts of appeals has grown faster than that of any other component of the federal judiciary.... A liberal construction of Rule 54(b) has a tremendous potential to increase our caseload still more rapidly, because of the rule's natural

tendency to multiply appeals in a single case."); *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 166 (11th Cir. 1997) ("[W]e have previously counseled district courts to exercise the limited discretion afforded by Rule 54(b) conservatively.").

 In the Eleventh Circuit, a two-prong test governs the analysis of whether to enter partial final judgment under Rule 54(b). *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir.2007). First, the court must determine that the decision at issue is a "final judgment." *Curtiss–Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). A "judgment" is a decision "upon a cognizable claim for relief," and it is "final" if it constitutes " 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)). Second, the Court must determine that there is no just reason to delay the appeal. *Id.* at 8, 100 S.Ct. 1460.

 Under the first prong of this test, the court must determine whether the decision at issue " 'disposes entirely of a separable claim ....' " *Lloyd Noland Found.*, 483 F.3d at 779. The Eleventh Circuit has noted that the dividing line between one of multiple claims is "very obscure." *Id.* Nonetheless, "the touchstone for determining whether an entire 'claim' has been adjudicated for purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding]' or 'substantially overlap[ping]' with remedies being sought by the remaining claims pending in the district court." *Id.* (quoting *In re Se. Banking Corp.*, 69 F.3d at 1547). Thus, where two claims seek "substantially similar relief," the resolution of one claim does not constitute a "final judgment" because the claims are

functionally the "same" for purposes of Rule 54(b). *Id.* at 780. Under this analysis, counterclaims are to be treated no differently from other claims: "Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Curtiss–Wright*, 446 U.S. at 9, 100 S.Ct. 1460.

 If the court determines that a decision constitutes a "final judgment," the court must then determine whether there are nonetheless just reasons to delay the appeal. *Id.* at 8, 100 S.Ct. 1460. Under this second prong of the test, the court must consider the interests of efficient judicial administration and the equities involved in the particular case. *Id.* The former consideration seeks to preserve the historic policy against piecemeal appeals, and the latter seeks to limit the use of Rule 54(b) for the "exceptional" case in which a litigant would suffer "unusual hardship" if required to await final disposition of the case before seeking appellate review. *Ebrahimi*, 114 F.3d at 166, 168. Of particular relevance to the first consideration is the degree to which pending claims are legally and factually intertwined with the adjudicated claim that constitutes a final judgment. *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. 1460. Thus where there is significant factual overlap between the adjudicated and unadjudicated claims, courts should be reluctant to use Rule 54(b). *Ebrahimi*, 114 F.3d at 167.

 Finally, if a court concludes that entry of final judgment under Rule 54(b) is proper, that court should clearly articulate its reasoning and the legal and factual findings that support its decision. *Id.* at 166. "The expression of clear and cogent findings of fact is crucial because it not only facilitates appellate review of a Rule 54(b) certification, but also assists the district court itself in analyzing the interrelat-

edness of the claims and the equities of the situation." *Id.* Accordingly, when a proper basis for entry of final judgment is not readily apparent, and the district court fails to clearly articulate its reasoning, the Court of Appeals will dismiss the appeal for lack of a final judgment. *Id.* at 166–67.

In this case, Defendants ask the Court to enter a final judgment as to its grant of summary judgment in favor of Plaintiffs on the issue of the enforceability of the Non–Compete. Defendants argue that entry of final judgment is proper because the only claims remaining in this case are Defendants' potential counterclaims, which, by the terms of the Court's August Order, may not be based on the enforceability of the Non–Compete. Therefore, Defendants contend, the counterclaims are "separable" as required under the first prong of the Rule 54(b) test. As to the second prong, Defendants argue they will suffer irreparable harm if forced to await final disposition of this case before seeking appellate review, as Plaintiff Boone in the meantime will be free to directly compete against Defendants. Defendants additionally contend that judicial administrative interests favor an immediate appeal, as an immediate appeal could allow the Court to avoid having to hold a second trial in the event the Eleventh Circuit finds the Non–Compete enforceable.

Plaintiffs, on the other hand, contend that entry of final judgment is premature given that Defendants have not yet answered the Complaint and asserted their counterclaims. That is, because the Court does not know what Defendants' counterclaims are, the Court cannot compare the interrelationship of the Non–Compete claims and Defendants' counterclaims as is required to determine whether the Court's decision is a final judgment and whether there are just reasons for delay.

The Court agrees with Plaintiffs that Rule 54(b) certification would be prema-

ture at this point in the litigation. Because Defendants have not raised their counterclaims, the Court cannot make the factual findings required for Rule 54(b) certification. Specifically, without knowing what Defendants' counterclaims are, the Court cannot analyze whether the counterclaims seek substantially the same relief as the claims related to the Non–Compete and thus whether the Court's decision regarding the enforceability of the Non–Compete constitutes a final judgment. For example, as Plaintiffs speculate (based on the claims Defendants have raised in the Delaware action), Defendants' counterclaims may seek to enjoin Boone's employment with Volt on grounds unrelated to the Non–Compete. In its August 3, 2011 Order, the Court foreclosed the availability of injunctive relief in favor of Defendants based on the Non–Compete. Thus the counterclaims may seek a "substantially overlapping" remedy as the adjudicated claim.

It is equally possible, on the other hand, and as Defendants vigorously argue, that the counterclaims will seek different forms of relief or permit more than one possible recovery and thus constitute "separable" claims for relief. Indeed, the fact that the counterclaims may not pertain to the enforceability of the Non–Compete supports Defendants' argument in this regard. But at this point, because Defendants have not asserted their counterclaims, the interrelatedness of the claims is purely a matter of speculation. The Court thus is unable to undertake the threshold Rule 54(b) analysis.

Similarly, without knowing the substance of Defendants' counterclaims, the Court cannot consider whether there is any just reason to delay an appeal in this case, even assuming the claims are "separable." In particular, the Court cannot determine whether allowing a direct appeal before resolution of the counterclaims

would promote sound judicial administration, as the Court does not know the factual underpinnings of the counterclaims and whether piecemeal appeals would require duplicative fact-finding by the appellate court. While this may be unlikely, as the Court's decision regarding the enforceability of the Non–Compete is purely a question of law and as the counterclaims may not pertain to the enforceability of the Non–Compete, *without knowing what the counterclaims are,* this is still a matter of speculation.

In sum, until Defendants assert their counterclaims, the Court cannot conclude that this is one of the rare cases in which departure from the historic federal policy against piecemeal appeals is proper. In light of this fact, and given the Eleventh Circuit's caution that district courts should exercise their Rule 54(b) discretion conservatively, Defendants' request for entry of final judgment under Rule 54(b) is **DENIED.**

### III. Request For Stay

Defendants also move the Court to stay proceedings in this action in the event Defendant's Motion for Certification or Motion for Entry of Final Judgment is granted. In light of the Court's denial of these requests for relief, Defendants' request for a stay is hereby **DENIED as moot.**

### Conclusion

For the foregoing reasons, Defendant's Motion for Certification to the Supreme Court of Georgia, or for Entry of Judgment under Rule 54(b), and for Stay is **DENIED.**